(No. 15168.—Judgment affirmed.)

THE PEABODY COAL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(STANLEY PERCHULES, Defendant in Error.)

*Opinion filed April 18, 1923.*

1. WORKMEN'S COMPENSATION—*what is proper evidence as to effect of injury.* In determining the extent or effect of the injury to an employee the Industrial Commission may consider the employee's testimony as to his condition, together with the testimony of physicians and the personal examination made by members of the commission.

2. SAME—*extent of period of temporary total incapacity.* The period of temporary total disability is the time of the healing process, during which the employee is totally incapacitated for work by reason of the illness attending the injury.

3. SAME—*when award for temporary total incapacity is warranted.* An award for temporary total incapacity for a period equal to the time the employee received treatment for his injury is warranted although he received pay for a few weeks in which he attempted to work during that period, where the attending physician testifies that the employee will not be in a condition to work until some weeks after his treatments have ceased and where the time the employee worked is deducted and the period of the healing process after the ending of treatments is added.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon E. S. SMITH, Judge, presiding.

E. P. TROBERT, for plaintiff in error.

KERR, MURPHY & LONDRIGAN, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

Stanley Perchules made application for adjustment of claim for compensation under the Workmen's Compensation act for an injury alleged to have occurred while he was working in plaintiff in error's coal mine in Sangamon county. After a hearing before the arbitrator an award was entered in Perchules' favor, and thereafter, on review before the Industrial Commission, a further award was allowed him. From this last decision the case was taken by *certiorari* to the circuit court and the award of the Industrial Commission was confirmed. The judgment of the circuit court has been brought to this court by writ of error for further review.

From the record before us it appears that the parties to this litigation were under and subject to the provisions of the Workmen's Compensation act; that the accident to Perchules arose out of and in the course of the employment; that the notice as to the cause of the accident was made in accordance with the act; that medical and surgical aid had been furnished to Perchules by plaintiff in error, and that he had been paid $158 on his compensation by plaintiff in error. The record shows that he had two children under the age of sixteen. He was working as a timberman in plaintiff in error's mine and sustained the injury November 4, 1920, caused, according to his testimony, by the falling of a large amount of slate from the roof of the mine, some of which struck him on the left arm, and he fell and struck his elbow on a car or some other object, injuring his arm severely. The evidence shows that he went home the day of the accident after telling his immediate boss that he could not work, and went to see Dr. Ot-

ten, who treated him for two days, and later, after consult-
ing with Dr. Emil L. Bernard, he was taken to the hospital,
where he remained three months or more, having his arm
dressed and receiving treatment. It appears that he went
back to his work in the mine two or three different times
before he found he could not keep on working as he could
not lift his arm, and that he had not worked in the mine
since that time. The award of the Industrial Commission
was that Perchules was temporarily totally incapacitated
for twenty-six weeks and sustained a permanent five per
cent loss of use of his left arm, and granted compensation
accordingly. The only questions in dispute in the case are
the nature and extent of the injury, and whether the com-
pensation allowed is in accordance with the evidence and
the statute.

On the hearings before the arbitrator and the Indus-
trial Commission Perchules testified that after the accident
he could only lift about 20 pounds, whereas he could easily
lift 150 pounds before. Dr. Bernard, who treated him for
some seven months after the accident, testified, on review,
that he examined the injured man on November 6 and
found him very sick, there being a wound on the left arm
that had become infected and was swollen from the joint
to the elbow; that he advised the patient to go to the hos-
pital and later opened up the arm; that Perchules was in
the hospital about four months under his care and witness
saw him a number of times each week; that when the pa-
tient left the hospital he still complained of soreness and
weakness of the arm and that he was still somewhat weak
from the infection in his system, and that as late as May 3
he was too weak to do hard manual labor; that in the opin-
ion of the witness it would take six or eight weeks more to
build Perchules up so he could do normal work. This doc-
tor also testified that a month before the hearing, on re-
view before the Industrial Commission, he examined the
wound in the arm and found it healed, and the motion in

the arm was good, with the exception that he did not have entire flexion in that arm, and that there was at least fifteen per cent loss of flexion, which he considered was demonstrated at the hearing by his having the injured man put his arms up in different ways and trying to touch his shoulders; that he thought he still had some adhesions in the elbow and that the arm was in as good shape as it ever would be; that the loss of flexion in the arm would not disable him from using the arm as well as he did before the accident, in ordinary work.

Dr. Charles L. Patton, the doctor for the mining company, testified both before the arbitrator and the Industrial Commission that he had examined the applicant on May 2 and 17 and September 6 and October 3 following the accident, and that from his examination in his opinion the applicant was able to work. He also had taken X-ray pictures of the arm. The doctor also testified to various motions that he had the injured man make in order to test the effect of the accident; that he could find no evidence of any nerve injury or to the joints, and, so far as he could ascertain, the elbow and shoulder joints could be put through all the range of motion that the normal joint could be put through; that Perchules had voluntary flexion and extension of the elbow joint that was normal; that witness found a scar about an inch and a half long over the point of the elbow but could find no atrophy of the muscles; that he could find nothing to indicate a loss of the use of the arm; that twice when the injured man visited him for examination witness found him under the influence of liquor, and that in his judgment he had fully recovered from his disability on account of his injury, and that the arm, when witness last examined him, was normal.

Dr. R. F. Herndon testified that it was his opinion, from his examination in March and again twice in May, that the injured man could have returned to work in March.

It is plain that there is a conflict between the testimony of the various doctors. Perchules' testimony as to the extent of his injury afforded some basis for determining the effect of the injury, and the personal examination made by the members of the Industrial Commission also afforded some basis for such determination. (*Central Illinois Public Service Co.* v. *Industrial Com.* 302 Ill. 27.) It is true that under the decisions of this court the extent of the period of temporary total disability is the period of the healing process, during which time the injured employee is totally incapacitated for work by reason of the illness attending the injury. (*Mt. Olive Coal Co.* v. *Industrial Com.* 295 Ill. 429.) The testimony of Dr. Bernard, who was in charge of the injured man's case from a day or two after the accident until he left the hospital, was that Perchules was temporarily totally incapacitated for a period of twenty-six weeks. It would appear from the evidence that the whole time the applicant was treated for the injury was from November 4, 1920, to May 3, 1921, but it would also appear that during that time he actually worked a number of days, for which he received compensation. It cannot be held that he was totally incapacitated during those days, and this time should at least be taken from the period of temporary total incapacity. It appears that the one sore had healed at the time the applicant left the hospital. Nevertheless he continued to receive treatments, and as his doctor testified, it was not until May 3 he ceased the treatments, and the doctor did not consider him even then in a proper condition for work. We think this evidence was proper as to the period of temporary total disability.

Counsel for plaintiff in error argues that the period of temporary total disability terminated upon the applicant's first return to work the first part of February, and states that there has been no testimony submitted of any change in the condition of his arm since that time. It is true there

is nothing in the doctor's testimony that refers to treatments when the applicant was actually working before his. treatments ceased, but he does testify to the general weakness and systemic infection resulting from the injury to the arm, and his belief that the applicant should take from six to eight weeks following his last examination on May 3, 1921, to build himself up in preparation for his occupational work, and that at that date he was too weak to do hard manual labor. It is not shown whether or not the doctor knew of the applicant's attempts to work, but he does assume to know the applicant's condition at the times of his examinations. The fact that the applicant attempted to perform labor at the mine and failed should not stand as a bar to prevent his receiving compensation for the time he was incapacitated, and we think the time for the building-up process, which the commission evidently fixed at about the same length of time as the time he attempted to work, was properly included as a part of the period of temporary total incapacity. We think, therefore, the time determined by the Industrial Commission's decision finds support in the testimony,—that is, the time of treatment from November 4, 1920, to May 3, 1921, deducting the time he worked and received compensation and adding the time for the building-up process immediately following May 3.

It is also contended by counsel for plaintiff in error that the award of the Industrial Commission was not justified as to the allowance of ten weeks' compensation at $13 per week for a permanent five per cent loss of use of the left arm. We have given the evidence in the record consideration, and are of the opinion that the testimony of the applicant, together with that of all the doctors who examined him, considered by the commissioners in connection with their examination as to the injury, justified the finding of the commission as to the award. We do not think that the evidence found in the record is such as to justify this court in saying that its manifest weight was against the

finding of the Industrial Commission and the decree of the circuit court.

The judgment of the circuit court will therefore be affirmed.

*Judgment affirmed.*