(No. 3271—

ALPHONSUS L. DIEL, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 15, 1939.*

WILBER H. HICKMAN, for claimant.

JOHN E. CASSIDY, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

This claim was filed on June 8, 1938, asking damages in the sum of $10,000.00 because of injuries incurred by claimant while a guard at the Illinois Penitentiary, Joliet branch, on or about November 10, 1937.

It appears from the record that claimant had been employed in the same capacity in which he was working at the time of the accident since May, 1934. During the forenoon, and to the best of claimant's recollection, on November 10, 1937, the claimant was guarding some prisoners on the honor farm and they were hauling in posts and using a hay-rack. Claimant was standing on this rack which was about three and one-half feet from the ground. When the horses started, claimant lost his balance and in an attempt to protect himself, jumped to the ground, injuring his right foot. He continued in the employment, although there were days that he was unable to work, until February 8, 1938, when he went to the hospital at the institution. It appears from the record that on the suggestion of the Warden, Mr. Ragen, because the institution hospital was not properly equipped to take care of the claimant, the claimant, who was a veteran of the World War, went to Hines Veterans Hospital on February 10, 1938, and remained there until May 28, 1938. His right leg was amputated on March 4, 1938 above the knee. The claimant returned to work at Joliet Penitentiary on August 12, 1938 at the same rate of pay that he received prior to the accident.

It appears from the record that claimant drew his full pay up to March 1, 1938, although he had been at the Hines Hospital since February 10th of that year.

The complaint in this case was filed on June 8, 1938, and proper notice was given by the claimant within thirty days after the accident.

During the year immediately prior to the date of the injury, he had received $112.75 per month, and in addition thereto he had received board and room, laundry, barber work, cleaning and pressing and a garage for his automobile, and he is willing to compute those services at the rate of $24.00 per month. On July 1, 1937, his pay was raised to $118.75 per month. It appears that at that time his wife came to live at Joliet from their home in Paris, Illinois; that she came sometime during the month of July, 1937, and thereafter the claimant continued to receive the benefits previously received, except that he no longer occupied a room at the penitentiary. Although married, he has no children.

The State did not pay any of his bills at the Hines Hospital; that because of the fact that he was a former soldier, the Federal Government paid these bills and furnished him with an artificial leg.

Claimant's right leg was amputated half way between the knee and the hip. Prior to the date of the injury he had never had any trouble with his right foot, and had no other injury after the accident before his foot and leg became infected. The foot was at first sore and slightly discolored on the bottom. The skin then broke open and infection set in on the ball of the foot between the second and third toes just at the toe.

The court finds that it has jurisdiction of this case under the Workmen's Compensation Act and that due notice was properly given and the complaint filed within one year.

The Compensation Act provides that:

"If the period of temporary total incapacity for work lasts more than six working days, compensation equal to fifty per centum of the earnings but not less than $7.50 nor more than $15.00 per week, beginning on the eighth day of such temporary total incapacity and continuing as long as the temporary total incapacity lasts, but not after the amount of compensation paid equals the amount which would have been payable as a death benefit under paragraph (a), Section 7, if the employee had died as a result of the injury at the time thereof, leaving heirs surviving as provided in said paragraph (a), Section 7: *Provided*, that in the case where the temporary total incapacity for work continues for a period of more than thirty days from the day of the injury, then compensation shall commence on the day after the injury."

Other provisions of the Compensation Act provide that:

"For the loss of a leg, or the permanent and complete loss of its use, fifty percentum of the average weekly wage during one hundred and ninety weeks."

In the case of *Payne* vs. *Industrial Commission*, 296 Ill. 223, at 229 it was held that no distinction is made under the Act between the loss of the whole leg and the loss of a part of the leg. The loss of any substantial portion of the leg constitutes the loss of the leg within the meaning of the Act, and the court held that the amputation of the leg ten inches above the ankle joint entitled claimant to compensation for the loss of the leg.

The entire period of temporary total disability need not follow immediately after the injury but is concluded when the injury has reached a permanent stage.

*Peabody Coal Co.* vs. *Industrial Commission*, 308 Ill. 133.

Under Sections 7 and 8 of the Compensation Act it is necessary to refer to Section 10 of the same Act for the basis for computing the compensation:

(a) The compensation shall be computed on the basis of the annual earnings which the injured person received as salary, wages or earnings if in the employment of the same employer continuously during the year next preceding the injury.

(i) To determine the amount of compensation for each installment period, the amount per annum shall be ascertained pursuant hereto, and such amount divided by the number of installment periods per annum.

This court has held in the cases of Clarence E. Vaugh, which was decided by this court on February 8, 1938 and William E. Bauer, which was decided by this court on May 11, 1938, numbers 2840 and 2934 respectively, as follows, that:

"A guard or attendant at a State penal or charitable institution is entitled to the benefits of the Workmen's Compensation Act of Illinois even though his duties may pertain to inmates who work on farm land constituting a part of such institution."

From the facts in this case, we find that the claimant's injuries arose out of and in the course of his employment.

It appears from the facts in this case that claimant was paid for non-productive time and that he made a demand for compensation six months from the date of the injury is not denied but admitted by the State. It also appears that he made a demand upon Warden Ragen on February 10, 1938, before he went to Hines Hospital.

Claimant had received an increase in salary on July 1, 1937, from $112.75 to $118.75. His wife went to live with him at Joliet on or about July 1, 1937, and from then on he did not occupy his room at the institution. Using the customary basis of $24.00 per month for maintenance and which the claimant admits against his own interest though stating that the maintenance was worth more than that, but that he is willing to accept for the purposes of this claim and using the further customary basis of $6.00 per month for room, it appears that the maintenance which the claimant did not avail himself of to the extent of $6.00 per month from July 1, 1937, was offset by the increase in pay which he received beginning July 1, 1937.

From the facts in evidence, it appears that from November 10, 1936 to July 1, 1937, a period of 7 2/3 months, the claimant was paid at the rate of $112.75 and in addition received maintenance valued at $24.00 per month, or a total of

$136.75 per month, which for the period of 7 2/3 months would amount to a total wage payment of $1,048.42. It further appears that for the period from July 1, 1937 to November 10, 1937, the claimant was paid on a basis of $118.75 plus maintenance which he received in kind, of a value of $18.00 because he did not occupy the room which would have been furnished him by the institution had he desired, making a total wage payment of $136.75 per month for a period of 4 1/3 months or a total wage payment during that period of time immediately preceding his accident of $592.58. The total wages received by claimant while employed by respondent in the same capacity totals $1,641.00, per year, or the sum of $31.55, as the average weekly wage. One half of $31.55 amounts to $15.77, which is more than the maximum provided by the Compensation Act. Claimant did not have any children under sixteen years of age. He is, therefore, only entitled to the sum of $15.00 per week compensation. His temporary total disability did not commence until February 8, 1938 when he went to the hospital at the institution and continued until August 12, 1938 when he returned to his work at the Stateville Penitentiary, or a period of 185 days, or 26 3/7 weeks. On the basis of $15.00 per week for the period of 26 3/7 weeks, claimant would be entitled to the sum of $396.43 temporary total disability compensation. However, the claimant was paid his full salary during the month of February, 1938, although he only worked seven days, which was one-fourth of that month of twenty-eight days, and he received one-fourth of his maintenance of $18.00 or $4.50, or a total of $123.25, while he should have received one-fourth of $136.75, the total of his cash wages and his maintenance, or $34.19, which is the amount which the claimant actually earned during the month of February, 1938 as against the amount which he actually received of $123.75. The claimant was, therefore, over-paid the sum of $89.06 for that amount. This should be deducted from the sum of $396.43, which leaves a balance of $307.37, being the amount of temporary total disability to which the claimant is entitled.

Having lost his right leg about midway between the knee and the hip, he is also entitled to 190 weeks at the rate of $15.00 per week, or the further sum of $2,850.00 for the specific loss of the leg.

Claimant also claims that there is due him the further sum of $79.50 for other and additional hospital and medical

services. Under Exhibits 3, 6, 7, 8 and 9 of his own testimony, he is only entitled to $50.42, the difference of $29.08 not being shown either in any Exhibit or in his own testimony, and we can only allow the sum of $50.42.

We, therefore, hold that claimant is entitled to the sum of $307.37, being the amount of temporary total disability, the sum of $2,850.00, being for the specific loss of the right leg, and the sum of $50.42 for other and additional hospital and medical services, or the total sum of $3,207.79; and that claimant is now entitled to have and receive from the respondent the sum of $307.37, being the amount of temporary total disability, the sum of $50.42 for other and additional hospital and medical services, and the sum of $981.43 being the amount of compensation that has accrued from August 12, 1938 to November 13, 1939, (being 65 3/7 weeks at $15.00 per week), in all, the sum of $1,339.22; and the remainder of said award to-wit the sum of $1,868.57 to be paid to him at the rate of $15.00 per week, said sums to be paid on the dates when claimant usually received his salary checks.

This award being subject to the provisions of an Act entitled "An Act making an appropriation to pay compensation claims of State employees and providing for the method of payment thereof," approved July 3, 1937 (Session Laws 1937 page 83), and being subject further to the terms of an Act entitled "An Act making appropriations to the Auditor of Public Accounts for the disbursement of certain moneys until the expiration of the first fiscal quarter after the adjournment of the next regular session of the General Assembly" (Senate Bill 123 as amended) approved July 8, 1939;—and being, by the terms of the first mentioned Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the General Fund in the manner provided for by the foregoing Acts.