**Robert M. PECK, Plaintiff,**

v.

**Abraham RIBICOFF, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 732.**

United States District Court

E. D. Virginia,
Newport News Division.

April 14, 1961.

T. Howard Spainhour, Norfolk, Va., for plaintiff.

Joseph S. Bambacus, U. S. Atty., Richmond, Va., Roger T. Williams, Asst. U. S. Atty., Norfolk, Va., for defendant.

WALTER E. HOFFMAN, District Judge.

By this proceeding plaintiff seeks a review of a final decision of the Secretary of Health, Education and Welfare, 42

U.S.C.A. § 405(g), denying his application for disability benefits as defined in 42 U.S.C.A. § 423(c) (2), the latter section providing as follows:

"The term 'disability' means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration. An individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required."

█ It is freely acknowledged that the findings of the Secretary as to any fact, if supported by substantial evidence, is conclusive. Such is the mandate of the statute. 42 U.S.C.A. § 405(g). As said by Chief Justice Hughes in Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126:

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Plaintiff is now 55 years of age. He completed three years of high school. In 1922, at the age of 16, he commenced working for the Norfolk National Bank which, of more recent years, has been known as the National Bank of Commerce following several mergers and consolidations. For a period of 35 years, until September 20, 1957, he was continuously employed by this banking institution. At least during the latter years his particular function was that of a silver counting teller, operating a coin counting and wrapping machine. Physically the work did not require much exertion, although he was required to lift coin bags weighing from 22 to 40 pounds. For the major portion of the time he remained seated at the machine.

On September 20, 1957, plaintiff was admitted to the Norfolk General Hospital for treatment of a condition initially diagnosed as ulcerated colitis. He was discharged after one week as "not improved." He subsequently applied to the Veterans Administration and was sent to Cherry Point, North Carolina, in October 1957, where he remained for two or three weeks at the hospital in that locality. Plaintiff was then transferred to the Veterans Administration Center at Kecoughtan, Hampon, Virginia, where he was admitted to the hospital on November 21, 1957, and remained there until February 28, 1958, at which time he was transferred to the Domiciliary, adjacent to and operated as a part of the Veterans Administration facility.

The record in no respect reflects that plaintiff is feigning his condition. When first admitted to a hospital the medical record indicates that he was bleeding frequently from the rectum in association with symptoms of a severe colitis. The medical diagnosis was "Idiopathic Ulcerative Colitis in its hemorrhagic phase" with the following comment: "This disease is a very intractable one and with his age period and the extreme weight loss I felt that a protracted rest, preferably in a hospital, was indicated." In May, 1958, the Chief of the Domiciliary Medical Service at Kecoughtan made this diagnosis: (1) inactive chronic ulcerative colitis, (2) pulmonary emphysema, (3) pernicious anemia, (4) tuberculosis, minimal, inactive. In the same report the physician stated: "It is anticipated that he will probably remain a Domiciliary member indefinitely," and in response to an inquiry as to when employment might be resumed, he noted "indefinite."

On May 21, 1958, plaintiff was again moved to the hospital at Kecoughtan where he remained until December 18, 1958. He filed his application for benefits by reason of disability on May 1, 1958.

A medical report dated July 29, 1958, marked plaintiff's condition, among other factors, as follows: "Loss of weight, diarrhea, fatigue," and in answer to certain questions, stated:

"Q. Is condition static? A. Yes.

"Q. If not, what optimum improvement can be expected, if any?
A. None.

"Q. Have you advised applicant not to work? A. Yes."

By letter dated November 24, 1958, plaintiff was notified that his application for disability benefits had been denied. On the same date, the Ward Physician at Kecoughtan reported:

"Our thinking concerning his diagnosis has changed since the report Dr. Buckley furnished you [report of May 14, 1958]. We now believe his chief difficulty to be pernicious anemia * * *. We believe his colon malfunction which consisted in diarrhea with passage of much mucous, but no blood, to be on a neurologic basis, secondary to combined system disease * * *. This patient is gaining weight, and the function of his colon has improved since he has been on Vitamin B–12."

When plaintiff was discharged from the hospital on December 18, 1958, at which time he was again transferred to the Domiciliary, the discharge report contained the following comment:

"At the present time his stools have been reduced to about 5–6 per day, but on his worse episodes he will pass 3 in the daytime and 8–10 at night with continual leaking of mucous from his rectum, especially when he is sitting or lying. Apparently it is not so bad when he stands up * * *. Another complaint which this man has is a numbness and tingling of his fingers which is worse in the morning when he gets up but as the day goes on and he uses his hands counting silver money, this numbness goes away. His left leg seems to be somewhat numb but this does not bother him very much * * *. It is expected that this patient will show slow improvement as far as neurological findings are concerned. His mucoid colitis does not seem to bother the patient very much * * *.

" * * * His rectal condition has gotten worse and he comes in for more intensive studies."

Dr. Buckley, the Chief of the Domiciliary Medical Service, again reported on January 8, 1959, that pernicious anemia constituted the primary diagnosis, and further said:

"Since being discharged [December 18, 1958] to the Domiciliary, vitamins and a bland, low residue diet have been prescribed for him. At present he has a constructive assignment from 9–11 A.M., Monday through Friday. It is anticipated that he will probably remain in a Domiciliary indefinitely."

In answer to an inquiry as to when employment may be resumed, Dr. Buckley noted, "indefinite."

At the time of a re-examination on June 9, 1959, plaintiff was reported as being "symptomatically better" with his "medical problems per se under temporary control." On October 10, 1959, Dr. Buckley reported:

"Medical management of this veteran on the equivalent of an outpatient basis continues to present quite a problem due to the necessity for continued close observation and treatment, as is to be expected and no definite improvement in his condition over that at the present time can be expected. Primary treatment as recommended upon his discharge from the hospital in December 1958 continues and will continue indefinitely.

"This veteran's constructive assignment in the Domiciliary is of very light nature requiring little physical effort in the sense of not returning him to the capability level of even part-time employment, but of performance of regulation insofar as possible."

The most recent medical report, dated April 28, 1960, from Dr. M. F. Renz, contains substantially the identical language.

In the face of this medical evidence the Hearing Examiner, whose decision

was affirmed by the Appeals Council, concluded that such evidence "fails to establish satisfactorily the type of disability intended by the Social Security Act, not only by its own terms, but also by the legislative history." The Hearing Examiner additionally expressed the view that "the evidence shows that the claimant's overall ability has not been so seriously impaired on or about May 1, 1958, the date he filed his application for disability insurance benefits, as to make him continuously unable to engage in any substantial gainful activity." The Examiner does not suggest what "substantial gainful activity" could be resorted to by plaintiff, but appears to rest his decision upon the fact that plaintiff "appears to have no economic motivation to seek employment" by reason of his receipt of a non-service connected pension from the Veterans Administration in the sum of $78.75 per month. He is divorced from his wife and contributes to the support of his minor daughter to the extent of approximately $50 per month. The daughter lives in Accomac County and plaintiff visits her once a month using public transportation. If the Examiner rests his decision upon lack of economic motivation, it surely is upon tenuous grounds.

The record discloses that, as a part of the occupational therapy prescribed under medical attention, plaintiff makes his bed and cleans up around his bunk; on Mondays and Wednesdays he is occupied for approximately one hour in the morning when he "calls back" the numbers in a Bingo game; from six to nine at night plaintiff helps around the day room adjusting the television set for suitable programs; five days each week he devotes 1½ hours to making pocket books, handbags and rugs; and for thirty minutes he is occupied, five days a week, riding a stationary bicycle as a part of his corrective therapy. From the foregoing the Hearing Examiner computed that plaintiff worked five hours a day, five days a week, and that this rendered plaintiff capable of "some" susbtantial gainful activity. The Examiner has completely disregarded the fact that this so-called "work" was conducted under medical advice; that it was not continuous but was broken throughout the day; and, even more important, the activity was carried on in a highly permissive and informal atmosphere, where there were no quotas, no "bosses," and no time limit, with the privilege of stopping to rest at any time. The gist of these activities are adequately described by the Chief of the Domiciliary Medical Service as being "designed as a rehabilitation effort in the sense of not returning him to the capability level of even part-time employment, but of performance of regulation insofar as possible."

■ There is, of course, substantial evidence to convince a reasonable person that plaintiff could engage in "some activity." The crucial question is whether plaintiff could engage in "any substantial gainful activity." Manifestly he could not, and the Secretary's final decision must be reversed with directions to award plaintiff the benefits to which he is entitled. The record is clear that plaintiff's disability is severe enough to preclude any substantial gainful activity and is such that it can be expected to be of long-continued and indefinite duration.

■ Disability under the Act is not commensurate with "helplessness." Aaron v. Flemming, D.C., 168 F.Supp. 291, 295. The statute must be given a reasonable interpretation as it is remedial in nature. Harper v. Flemming, 4 Cir., 288 F.2d 61. It certainly was not the intention of Congress to impose a test so severe as that required by the Secretary, thus making it necessary for a claimant to eliminate every possibility of gainful employment. Klimaszewski v. Flemming, D.C., 176 F.Supp. 927, 932. In the leading case of Dunn v. Folsom, D.C., 166 F.Supp. 44, 49, in discussing the word "substantial," it is said:

"It should also be noted that the word 'substantial' as used in Secs. 416 and 423 does not modify 'gainful', but rather modifies 'activity.'

The activity in which the plaintiff must be able to engage must not only be 'gainful' but it must also be 'substantial.' The determinative factor here is not how substantial the gain is, but how substantial the activity in which the plaintiff could gainfully engage."

The Secretary relies upon Adams v. Flemming, 2 Cir., 276 F.2d 901, and Fuller v. Folsom, D.C., 155 F.Supp. 348. In Adams, the claimant's disability antedated his retirement by many years and the causal connection between disability and alleged lack of any substantial gainful activity was not established. In Fuller there was no substantial medical testimony to support the contention of inability to render any substantial gainful activity. Miller v. United States, 294 U.S. 435, 55 S.Ct. 440, 79 L.Ed. 977, was an action under the old war risk insurance act, but is inapplicable as a different test was stated and, furthermore, plaintiff's income was depleted because he lacked ability as a salesman, not by reason of his injury incapacitating him.

It is unnecessary to consider the persuasive arguments in Parfenuk v. Flemming, D.C., 182 F.Supp. 532, and Mann v. Flemming, D.C., 189 F.Supp. 587, as this Court need not go that far in arriving at the conclusion that the Secretary was in error. The authorities are discussed at length in the recent opinion of Judge Dalton in Roop v. Flemming, D.C., 190 F.Supp. 820.

In Teeter v. Flemming, 7 Cir., 270 F.2d 871, the expert medical testimony of inability to engage in substantial gainful activity stood uncontroverted on the record and the Secretary's finding adverse to the claimant was reversed. In the present case there is not the slightest intimation from any medical authority that plaintiff can or will, at any time in the foreseeable future, perform any substantial gainful activity. At best it can be said that the conclusions of the Hearing Examiner are his own findings, not predicated upon evidence, and without any suggestion in what substantial gainful activity plaintiff could engage.

 The statute does not require a remand for further hearing or findings. The parties do not suggest that additional evidence could be presented. In Aaron v. Flemming, supra, Circuit Judge Reeves merely ordered that the decision be reversed and the cause remanded "with directions to find the plaintiff disabled." [168 F.Supp. 296] This appears to be the sensible solution to this case in which plaintiff's application has been pending for nearly three years, although the action in this Court was not instituted until July 8, 1960. Counsel for plaintiff will prepare and present, after inspection by counsel for defendant, an appropriate order.