(No. 43062.—

ALLIS CHALMERS MANUFACTURING COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(John Fry, Appellee.)

*Opinion filed May 29, 1974.*

Samuel C. Patton, of Springfield, for appellant.

Frank S. Calandrino, of Springfield (Michael J. Logan, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Claimant, John Fry, sought an adjustment of his claim for workmen's compensation on January 23, 1967. He

alleged that he sustained an injury arising out of and in the course of his employment on November 3, 1966, at Allis-Chalmers Manufacturing Company, his employer. The issues presented before the arbitrator were the extent of injury and the amount due. An award was granted to claimant for 16 5/7 weeks at $76 per week for intermittent periods of temporary total incapacity. The arbitrator further found that claimant's disabling condition had not yet reached a permanent condition. (Ill. Rev. Stat. 1965, ch. 48, par. 138.19(b).) The Industrial Commission confirmed the award, and on *certiorari* to the circuit court of Sangamon County the award was sustained. The employer has appealed to this court contending that the award was improper for claimant did not prove he was unable to work, and that there was insufficient medical evidence to entitle claimant to the award.

Claimant testified before the arbitrator in July, 1968. He said that on the date of the injury he was bending over to obtain an item for use on a machine he was operating when he experienced a dull pain in his back just below waist level. He found that it was difficult to straighten himself, and he went to his employer's dispensary where a nurse gave him medication and applied a heat lamp. The following day claimant sought medical aid. Claimant was hospitalized where he was placed in traction for five days. He also received physical therapy and continued seeing this physician for heat treatment and medication.

Claimant did not work for 26 days after the accident. When he returned he was assigned lighter duties but was subsequently transferred to heavier work for two weeks. Eventually he was reassigned to lighter responsibilities in the trucking department until his layoff in March, 1967.

He said that he had pains in his legs, arms and shoulders and experienced great difficulty in manipulating his right arm. This condition did not exist prior to the date of injury. He went to several physicians, one of whom recommended a lumbrosacral brace, which he still wore.

After leaving Allis-Chalmers, claimant worked for six

weeks for a local farmer helping to plant crops. During this time pain and weakness in his right arm persisted, requiring him to drive the tractor primarily with his left arm. He testified that if he tried to bend or lift anything, his legs began to tremble and became weak. There was also pain, particularly in the right leg. He said that he could not sleep on his back or right shoulder because of pain.

From September to December 1967, claimant assisted the farmer in harvesting his crops when the weather permitted. While he was driving a combine he still experienced pain. The following spring he worked for three days at the farm but could not continue due to intense pain in his right shoulder.

On cross-examination claimant stated that he had unsuccessfully sought other factory employment since leaving Allis-Chalmers. He had exhausted his unemployment-compensation benefits and some monetary remittances due from Allis-Chalmers because of his layoff. He was presently receiving welfare assistance under the Aid to Dependent Children program after a medical examination conducted pursuant thereto found him to be "incapacitated."

Claimant's wife testified that since the accident he had become irritable and nervous. She described a recent incident when claimant had carried water from a well due to the malfunctioning of a water pump. As a result of this activity he was incapacitated for several days.

By agreement of the parties, various medical reports from physicians were introduced pertaining to claimant's condition. Dr. Albert Siegel examined claimant in February, 1968, and noted considerable chronic strain in the lumbrosacral area, particularly on the right side during hyperflexion and re-extension with muscle spasm in this region. Dr. Mario Gospodinoff examined claimant in March, 1967, and prescribed medication. He concluded that claimant was suffering from "Endogenous Depression," which he did not attribute to a "compensation

neurosis." Two reports from Dr. Lyle Wacaser, a neurological surgeon, were submitted. He could find nothing objectively wrong after certain tests were conducted, although he noted that claimant's ability to bend was limited. This physician had claimant obtain a back brace and concluded that no further action would be profitable. He suggested that psychiatric reasons aggravated claimant's complaints. Dr. John Meyer, who previously treated claimant, conducted a series of tests in March, 1968; and, in part, he concluded that there were no present objective findings related to the injuries. Dr. Chauncey Maher treated claimant for hyperthyroidism. In addition to this condition, Dr. Maher, who was not a psychiatrist, was of the opinion that claimant was suffering from a "compensation neurosis." He doubted that claimant's "somatic complaints will improve until his claims for injury are settled."

On review before the Commission in December, 1968, claimant testified that the condition was worsening. He said that he had recently worked for several weeks at Winchester Packaging but was forced to quit because he was unable to continue due to the condition of his right arm. His duties at that factory consisted of running a machine which made plastic bags. Payroll receipts indicated that claimant had worked for two weeks and had received a net total of about $140 for his services. He also related his unsuccessful efforts to obtain other employment and his recent hospitalization.

Ervin Shorz, who was associated with Allis-Chalmers as an X-ray technician, testified as to certain inquiries concerning claimant which had been directed to personnel at factories where claimant had applied for work. At one business it was determined that claimant was not hired because of his limited formal education and his unsatisfactory aptitude-test score. On his employment application at this factory, claimant indicated that he had a sore back at times.

Allis-Chalmers principally contends that the record is totally devoid of any evidence to sustain an award for temporary total incapacity. It relies upon language in *Arbuckle v. Industrial Com.*, 32 Ill.2d 581, 586, where it was said: "In proving such period of [temporary total] incapacity, it is not enough for the employee to show that he·did not work—he must also show that he was unable to work." Allis-Chalmers argues that claimant worked at its factory until March, 1967, several months after the accident, and thereafter worked briefly at different times for a farmer. Moreover, it relies on claimant's numerous attempts to obtain work at other factories and his application for unemployment compensation, which it interprets as his representation that he was available for employment. There is no contention raised that claimant did not sustain an accidental injury on November 3, 1966, nor is the amount of the award contested if the Commission's determination of claimant's condition is upheld.

Factual disputes related to the extent of disability are primarily within the purview of the Commission (*Bell and Gossett Co. v. Industrial Com.*, 53 Ill.2d 144, 149), and its determination will not be set aside unless contrary to the manifest weight of the evidence (*Board of Trustees of the U. of I. v. Industrial Com.*, 55 Ill.2d 293, 300; see also *Wade v. Industrial Com.*, 55 Ill.2d 587, 590-91). We do not believe that claimant's continued employment at Allis-Chalmers after November 3, 1966, is controlling. In *Grey v. Industrial Com.*, 35 Ill.2d 462, 466, and *Peabody Coal Co. v. Industrial Com.*, 308 Ill. 133, 138, it was recognized that employees' attempts to work after their injuries were not significant under the respective factual situations.

Claimant's efforts to find other subsequent employment in this case is not necessarily determinative. He said that the pain and inability to properly utilize his right hand and arm forced him to eventually quit as a farm laborer. It would be unjust to adopt a *per se* exclusion of benefits for temporary total incapacity merely because a

claimant unavailingly attempts to work after his injury. We conclude, however, that this may be a factor in the Commission's decision, and under the circumstances of this case we cannot say that its resolution of the matter was contrary to the manifest weight of the evidence.

Allis-Chalmers also argues that there is no competent medical evidence that the claimant sustained an injury of which there were objective symptoms. It maintains that the only indications of any incapacity or disability are claimant's subjective complaints. In support of this position it cites *Allis-Chalmers Manufacturing Co. v. Industrial Com.*, 33 Ill.2d 188. While that decision rejected an award for partial permanent and total loss of use of the employee's leg because there was no evidence other than subjective complaints introduced to support the claim, we did affirm an award for temporary total incapacity under circumstances quite similar to those presented in this case.

Several medical reports allude to the possibility that claimant's condition was not due to physical maladies at the time the reports were compiled but rather were related to claimant's mental disposition. Disability caused by a traumatic neurosis is compensable (*Hook v. Industrial Com.*, 53 Ill.2d 245, 248), and the possibility of psychiatric or emotional implications would not affect an award for disability resulting from physical injuries (*Swift & Co. v. Industrial Com.*, 52 Ill.2d 490, 494).

Allis-Chalmers does not dispute that an accident occurred requiring claimant's hospitalization. He was placed in traction, received physical therapy, and thereafter was absent from work for nearly a month. The medical report of Dr. Siegel notes lumbrosacral strain and muscle spasm. The medical reports of Drs. Wacaser, Meyer and Maher refer to claimant's subjective symptoms of an injury, yet a back brace was recommended by Dr. Wacaser and no report states that claimant was able to work. It is apparent that the reasonable inferences to be drawn from the aforesaid considerations might permit the Commission

to conclude that claimant's condition did not originate from a subjective condition but rather resulted from an accidental injury evidenced by objective characteristics.

Accordingly, the judgment of the circuit court of Sangamon County is affirmed.

*Judgment affirmed.*