(No. 48421.- ▮▮▮▮▮▮▮)

OWENS-CORNING FIBERGLAS CORPORATION, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Charles Howard Hammond, Appellee.)

*Opinion filed April 5, 1977.*

Livingston, Barger, Brandt, Slater & Schroeder, of Bloomington (James T. Foley, of counsel), for appellant.

James Walker, Ltd., of Bloomington, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

Respondent, Owens-Corning Fiberglas Corporation, has appealed to this court pursuant to our Rule 302(a) (58

Ill. 2d R. 302(a)) to review a decision of the circuit court of McLean County in a Workmen's Occupational Diseases Act case (Ill. Rev. Stat. 1971, ch. 48, par. 172.36 *et seq.*). The arbitrator awarded claimant, Charles Hammond, 3 1/7 weeks of benefits for temporary total disability at the amount of $83 per week. On review, the Industrial Commission extended this compensation to a period of 26 weeks, and also awarded claimant $4,322.37 for reasonable medical expenses incurred as a result of the occupational disease. The respondent appealed, and the petitioner also appealed the failure of the Commission to award compensation for permanent partial disability. The circuit court affirmed the Commission's award but also ordered respondent to pay claimant additional compensation of $51.35 per week for a period of 390 weeks. This latter award was predicated on the circuit court's determination that claimant had become partially incapacitated from pursuing his usual and customary form of employment.

It was stipulated, at the arbitrator's hearing, that on April 2, 1971, the relationship of employer-employee existed between claimant and respondent and that respondent operated under the provisions of the Workmen's Occupational Diseases Act. At that time claimant was married and had two children under 18 years of age. Claimant's average yearly earnings were $8,759.92, and his weekly wage was $168.46.

Claimant had worked in a plant in Bloomington, Illinois, since 1953. The plant manufactured products which were partially composed of asbestos fibers, and the production operation emitted dust into the air which contained these fibers. Respondent purchased the plant on April 15, 1970. Claimant was working as a supervisor at that time, and he continued in this position until April 3, 1971, when he was laid off.

Claimant was hospitalized on April 22, 1971, after complaining of chest pains, severe coughing and shortness of breath. Claimant was treated by Dr. Robert Conklin,

who is a specialist in thoracic surgery. Dr. Conklin's final diagnosis was that claimant suffered from chronic and acute bronchitis and pulmonary fibrosis related to asbestos fibers in his lungs. It was the doctor's opinion that the condition of pulmonary fibrosis could have been caused by exposure to asbestos dust and that the condition was permanent. The doctor further testified that claimant's condition was a gradual, degenerative disease and that there was not much which could be done to relieve the condition.

Dr. Conklin advised claimant to not return to work at respondent's factory and to find work where he could breathe cleaner air. In August 1971, claimant obtained work as a truck driver. Claimant testified that he worked a full 40-hour week when work was available, but that he did not work regularly during winter or on other days when the weather was bad. Claimant testified that his earnings as a truck driver in 1972 amounted to about $5,200.

Claimant has been hospitalized twice since his initial hospitalization in April 1971. Claimant testified that he still coughs frequently, often uncontrollably, and that he still suffers from shortness of breath. According to Dr. Conklin, claimant's health has not improved significantly since his first treatments in April 1971.

Additional testimony was taken before the Industrial Commission. Dr. George McNeely testified that he had examined claimant in July 1970 (nine months before claimant was laid off) at the respondent's request. Dr. McNeely's examination indicated a condition of diffused fibrosis in both of claimant's lungs. Dr. McNeely had reported to respondent that claimant should be retired for medical reasons. The doctor did not specifically recall whether he had informed claimant of his findings. Claimant testified that no one had informed him, at that time, that he had contracted asbestosis.

Respondent challenges the ruling of the circuit court

upon a number of grounds. Initially, respondent contends that claimant was not disabled within the meaning of the Act. In determining this issue, and other issues where a question of fact is involved, we are governed by the well-settled rule that the findings of the Industrial Commission on a factual question will not be reversed unless they are contrary to the manifest weight of the evidence. *American Steel Foundries v. Industrial Com.* (1973), 55 Ill. 2d 538, 540.

Section 1(e) of the Workmen's Occupational Diseases Act defines the term "disablement" as "the event of becoming disabled from earning full wages at the work in which the employee was engaged when last exposed to the hazards of the occupational disease *** or equal wages in other suitable employment." (Ill. Rev. Stat. 1971, ch. 48, par. 172.36(e).) Respondent contends that the testimony did not show that claimant was disabled from performing his customary duties, but only that he would become disabled if he continued to perform such duties. We find this contention to be without merit. A workman is considered disabled for purposes of the Act when he can no longer work without endangering his life or health. (*American Steel Foundries v. Industrial Com.* (1973), 55 Ill. 2d 538, 540.) Ample evidence was introduced to demonstrate the extent of claimant's occupational illness and its continuing nature. The evidence is clear that claimant, as a result of an occupational illness, was unable to engage in the type of work he had performed for approximately 18 years.

Respondent next contends that it was error for the circuit court to award claimant compensation for permanent partial incapacity when the Industrial Commission failed to make such a finding. It should be noted that the Commission did not expressly enter a finding that claimant had not suffered a partial incapacity. The arbitrator had ruled that the disabling condition was temporary and had

not yet reached a permanent stage, and the Commission's order was silent on this point.

Section 8(d) of the Act (Ill. Rev. Stat. 1971, ch. 48, par. 172.43(d)) provides that where an employee is partially incapacitated from pursuing his usual line of employment, he shall receive a certain percentage of the difference between his former wage and the amount he is now able to earn in the same employment or in some other suitable employment. The record is clear that the claimant is no longer able to pursue his usual employment. The record is also clear that claimant's condition is not temporary. The sole medical testimony established that claimant's condition is progressive and degenerative. None of the evidence suggested that claimant's condition was improving or even subject to improvement. The contrary conclusion of the arbitrator was against the manifest weight of the evidence. To whatever extent the Industrial Commission's failure to enter a section 8(d) award rested on the conclusion that claimant's condition was temporary, its decision was also contrary to the manifest weight of the evidence.

Respondent contends, however, that the record does not establish that claimant is unable to earn the same wages as he did before his disablement in some other suitable employment. In *Groveland Coal Mining Co. v. Industrial Com.*, 309 Ill. 73, 75, a case involving section 8(d), we stated that "[i]f the employee is making an honest effort to work and the evidence shows that he is actually earning what he is able to earn but that it is less than he earned before his injury, then a fair award for the partial disability he has suffered would be the statutory percentage of the difference between the average amount he actually earned before his injury and the average amount he is actually earning since his injury."

Here, there is no doubt that claimant is making an honest effort to work at the best employment he is able to

obtain after his disablement. Because his partial incapacity to pursue his usual employment is of a permanent nature, claimant is entitled to an award pursuant to section 8(d) if he is now earning less than in his former position.

Claimant testified before the Industrial Commission that he receives $4 per hour for his work as a truck driver when work is available. At the time of the arbitration hearing, claimant's hourly rate of pay was $3.50. Claimant also testified, however, that his work as a truck driver was not steady and that his hours of work fluctuated according to the weather and the seasons. Claimant worked little during the winter months. At the hearing before the Commission, which was held on February 14, 1974, claimant testified that he had last worked on December 4, 1973. Claimant testified that as a result of the variable nature of his hours of employment his annual earnings since leaving respondent's employ are about $5,200. In computing the amount of its section 8(d) award, the circuit court granted claimant the statutory percentage of the difference between $5,200 and the $8,759.62 which the parties stipulated were claimant's earnings during the year preceding his disablement.

Respondent contends, however, that the circuit court erred in its computation of the amount of the section 8(d) award. Specifically, respondent asserts that since claimant was earning $4 per hour after his disablement his average weekly wage was $160, and that the differential was only $8.46. According to respondent's computation, claimant would be entitled to $6.34 per week after application of the statutory percentage. We do not agree with respondent's calculation. Respondent's argument would have us distort the reality of claimant's situation and hold that he is earning far more money than he actually receives. Respondent contends, however, that this result is mandated by section 10(g) of the Act (Ill. Rev. Stat. 1971, ch. 48, par. 172.45(g)).

Section 10 provides the basis for computing compen-

sation awards. Subsection (g) states: "Earnings, for the purpose of this section, shall be based on the earnings for the number of hours commonly regarded as a day's work for that employment, and shall exclude overtime earnings." In our view, subsection (g) is inapplicable in the present case. Section 10(g) assures that compensation awards will not be distorted by such factors as overtime pay. It does not require that an employee shall be uncompensated for an actual loss in earning capacity due to the seasonal nature of the employment he secures subsequent to disablement. The object of section 10 is to provide methods for determining an employee's annual wage in order to compensate him for loss of earning capacity. Here the claimant's loss of earning capacity is readily discernible. He earned $8,759.92 annually before his disablement and received a significantly smaller yearly wage after he was required to leave respondent's employ. Claimant estimated this latter amount to be about $5,200 per year, and the circuit court accepted this figure in determining its section 8(d) award.

The circuit court correctly determined that an award for permanent partial incapacity should have been entered by the Commission and that the amount of this award should be based upon the differential between $8,759.92 and the amount of claimant's annual earnings after his disablement, which the evidence shows was "about $5,200" a year. We affirm the award for permanent partial disability as computed by the circuit court.

Respondent also contests the Industrial Commission's award of $83 per week for 26 weeks for temporary total incapacity. Respondent contends that claimant was, at most, entitled to only 3 1/7 weeks of temporary benefits as was determined by the arbitrator. The 3-1/7-week figure represents approximately the amount of time claimant was hospitalized as a result of his disablement. The longer benefits period includes the time during which claimant was unemployed following his layoff.

An employee's right to temporary total compensation is a factual question which may be reversed only if the Commission's decision is against the manifest weight of the evidence. (*Allis Chalmers Manufacturing Co. v. Industrial Com.* (1974), 57 Ill. 2d 257, 262.) Respondent relies upon claimant's attempts to find work during the period and his application for unemployment benefits as evidence that claimant was capable of employment. In *Allis Chalmers*, however, we declined to adopt a *per se* rule that would exclude temporary total incapacity benefits whenever an employee unavailingly attempted to find work. (57 Ill. 2d 257, 262-63.) The record in the present case establishes that the claimant was under semiregular medical care and supervision throughout the period in question, and we cannot say that the Industrial Commission's decision to award 26 weeks of temporary total incapacity benefits was against the manifest weight of the evidence.

The final issue raised is that respondent is not liable for the reasonable medical expenses incurred for the treatment of claimant's occupational disease. Respondent contends that claimant elected to secure treatment at his own expense (Ill. Rev. Stat. 1971, ch. 48, par. 138.8(a)). Respondent relies upon past decisions of this court wherein it was stated that in the absence of a request for medical assistance an employer is not liable unless he has knowledge of the employee's need for medical services. (*Bell & Gossett° Co. v. Industrial Com.* (1972), 53 Ill. 2d 144, 150; *Quaker Oats Co. v. Industrial Com.* (1953), 414 Ill. 326, 338.) These authorities are not applicable to the present situation, however, because a doctor in respondent's employ was aware of claimant's condition in July of 1970 and recommended that claimant be retired for medical reasons. The record, thus, clearly contained evidence in support of the Commission's decision, and that determination is not contrary to the manifest weight of the evidence.

Therefore, the judgment of the circuit court of McLean County is affirmed.

*Judgment affirmed.*