**Darrell C. GRIFFETH, Plaintiff,**

v.

**SHEET METAL WORKERS' LOCAL UNIONS AND COUNCILS PENSION PLAN, et al., Defendants.**

**No. Civ96–595–PHX–RCB.**

United States District Court,
D. Arizona.

Sept. 12, 1997.

William L. Rubin, Goering, Roberts, Berkman, Rubin & Brogna, PC, Tucson, AZ, for plaintiff.

Marc R. Lieberman, Lieberman, Dodge, Sendrow & Gerding, Ltd., Phoenix, AZ, for defendants.

## ORDER

BROOMFIELD, Chief Judge.

Plaintiff Darrell C. Griffeth ("Griffeth") filed an ERISA complaint in state court against two labor unions of which he was an employee and against two employee benefit plans of which he was a participant. That complaint contains two claims: Under the first claim, Griffeth alleges that he was not paid pension benefits at a rate that was properly due to him. Under the second claim, Griffeth alleges that Defendants failed to pay him disability benefits to which he was entitled. That complaint was thereafter removed to this court. On

March 22, 1996, pursuant to a stipulation, the court dismissed the defendant labor unions without prejudice. Pending before the court is the remaining defendants' motion for summary judgment of Griffeth's second claim. Oral arguments were held on Monday, September 8, 1997. At the end of those arguments, the court took the matter under advisement. The court now rules.

## I. BACKGROUND

The following facts are undisputed. From January 1, 1982 to January 17, 1992, Griffeth was employed by the Sheet Metal Workers' International Association (the "Union"). [Stipulated Statement of Facts, "SSOF," ¶ 2]. During his employment, he participated in the Sheet Metal Workers Local Unions and Councils Pension Plan ("LU & C Plan"). [SSOF ¶ 5]. Under the LU & C Plan, a participant is eligible for a disability pension if he becomes "totally disabled" while "actively employed as a Covered Person." [SSOF ¶ 6]. The Plan defines a "covered person" as a "[s]alaried [o]fficial of a [l]ocal [u]nion," and a "salaried official" is "an employee who is elected or appointed to a compensated office or position in a Local Union." [SSOF ¶ 6]. In turn, the Plan defines a total disability as follows:

Section 9. Total Disability.

(a) A Covered Person shall be deemed totally disabled hereunder only if the Social Security Administration has determined that such Covered Person is entitled to a Social Security Disability Benefit in connection with his Old Age and Survivors' Insurance Coverage ... In addition, the Trustees [of the LU & C Plan] may, in their sole judgment, require medical evidence that he had been totally disabled by injury or disease so as to be prevented thereby from continuing in his employment as a Covered Person, and that he is unable to engage in, or secure, any other employment or gainful pursuit.

[SSOF ¶ 6].

On January 17, 1992, Griffeth resigned from the Union, citing a disabling heart condition as the reason for his resignation. [SSOF ¶¶ 2, 7]. On June 7, 1993, Griffeth applied for disability benefits under the LU & C Plan. [SSOF ¶ 8]. In his disability application, he states that he had become disabled on January 17, 1992, the day he terminated employment with the Union, and that his disability was a severe coronary artery disease. [Id.]. However, also in that application, Griffeth indicated he continued to work as a "consultant" for the Union until October 15, 1992. The LU & C Plan denied that application initially and on appeal because a finding of disability by the Social Security Administration (SSA) was a condition precedent for receiving disability benefits under the Plan and because Griffeth had not yet received such a finding.

Accordingly, Griffeth applied for a Social Security disability pension. His application stated, "I became unable to work because of a disabling condition on October 15, 1992." [SSOF ¶ 11]. He also filed a "disability report" which stated that, after January 17, 1992, he worked as a business manager from February 1992 to October 1992. [SSOF ¶ 13]. A "vocational report" and an "activities of daily living questionnaire" also contained similar information. [SSOF ¶ 14]. Finally, as part of that application, Griffeth submitted an "Attending Physician's Statement of Disability" completed and signed by his treating cardiologist, Russell S. Ruzich, M.D. In that statement, Dr. Ruzich stated that Griffeth's disability began on October 10, 1992 and that Griffeth had been totally disabled from that date to the present. [SSOF ¶ 15].

The SSA denied Griffeth's claim on initial review and upon reconsideration but granted it after a hearing before an Administrative Law Judge ("ALJ"). The ALJ determined that Griffeth's disability began on October 15, 1992. [SSOF ¶¶ 17, 18, 20].

On November 15, 1994, Griffeth wrote a letter to the Administrators of the LU & C Plan, notifying them as to his Social Security award and requesting that he be

awarded disability benefits under the Plan. [SSOF ¶ 21]. On December 5, 1994, the Administrators of the Plan denied Griffeth's application, reasoning that the Plan required *both* that he be approved for social security disability benefits and that he be actively employed as a covered person when he became totally disabled; that he was a "covered person" only until January 17, 1992; that he became totally disabled on October 15, 1992; and that, therefore, he was not a "covered person" when he became totally disabled. [SSOF ¶ 22]. Griffeth appealed, but the Plan Administrator reached the same determination on appeal. [SSOF ¶¶ 23, 24]. Now, Griffeth has filed a complaint alleging that the decisions of the LU & C Plan Administrator(s) violate ERISA.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where no genuine issue exists as to any material fact and where the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether to grant summary judgment, the court will review the facts and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 577, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. The requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "material fact" is any factual dispute that might affect the outcome of the case under the governing substantive law. *Id.* at 248,

106 S.Ct. 2505. A factual dispute is "genuine" if the evidence is such that a reasonable jury could resolve the dispute in favor of the nonmoving party. *Id.*

Moreover, the moving party is entitled to judgment as a matter of law if the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party need not support its motion with affidavits or other similar material negating essential elements of the nonmoving party's claim. *Id.*

Finally, a nonmoving party cannot rest upon mere allegations or denials in the pleadings or papers. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. Instead, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* If the nonmoving party's evidence is merely colorable or is not significantly probative, a court may grant summary judgment. *Id.* at 249–50 ("[T]he mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient.").

## III. DISCUSSION

The sole issue pending before the court is whether the LU & C Plan Administrator(s) properly denied Griffeth a disability pension under the terms of the LU & C Plan. In resolving this issue, however, the court does not conduct a *de novo* review of the LU & C Plan Administrator(s)' determinations. Rather, where a pension plan vests its administrators with discretionary authority to determine eligibility or construe the plan terms—as the LU & C Plan does here,[1] the court may review the

---

1. A plan confers discretion when it "includes even one important discretionary element, and the power to apply that element is unambiguously retained by its administrator." *Snow v. Standard Ins. Co.*, 87 F.3d 327, 330 (9th Cir.1996). Here, at least three provisions of the LU & C Plan vest the Plan Administrator(s) with discretionary authority. Section 3 of the LU & C Plan states that the Plan's trustees:

shall subject to the requirements of law, be the sole judges of (a) the standard of proof required in any case; (b) the application and interpretation of this Plan; (c) the entitlement to or amount of a pension; (d) the crediting of Future or Past Service; and the decisions of the Trustees with respect to any of the foregoing shall be final and binding on all parties.

administrator's determinations only for an abuse of discretion.[2] *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Winters v. Costco Wholesale Corp.,* 49 F.3d 550, 552 (9th Cir.1995), *cert. denied,* 516 U.S. 908, 116 S.Ct. 276, 133 L.Ed.2d 197 (1995). Under this standard, the court can reverse a decision of the plan administrator only if the decision is made without explanation, or in a way that conflicts with the plain language of the plan, or is based on clearly erroneous findings. *Atwood v. Newmont Gold Co., Inc.,* 45 F.3d 1317, 1323–24 (9th Cir.1995); *Taft v. Equitable Life Assurance Soc'y,* 9 F.3d 1469, 1472–73 (9th Cir.1993). Here, the only issue raised by the parties is whether the administrator's findings were clearly erroneous; the court concludes they are not.

Under the LU & C Plan, an employee is eligible for disability benefits only if he

> Section 9 of the Plan states that the Plan's Trustees
> > may, in their sole judgment, require medical evidence that [an applicant] had been totally disabled by injury or disease so as to be prevented thereby from continuing in his employment ... and that he is unable to engage in, or secure, any other employment or gainful pursuit.
>
> Finally, Section 7 of the Plan states that Trustees "may adopt such administrative interpretations of the Rules and Regulations of the Plan as they consider necessary to carry out the intent and purpose of the Plan and provide for effective administration thereof." [Defs.Mot.Dism. at 4–5].

**2.** In his response to Defendants' motion in limine, Griffeth raises for the first time that the plan terms are ambiguous and that the court must therefore apply a *de novo* rather than an abuse of discretion standard of review. Yet he never raises such an argument in his response to Defendants' motion for summary judgment. Nonetheless, even if Griffeth had raised this argument in the latter pleading, the argument would have been meritless.

Under Ninth Circuit authority, the court must review *de novo* whether the Plan's terms are ambiguous. *Patterson v. Hughes Aircraft Co.,* 11 F.3d 948, 950 (9th Cir.1993). And ambiguities in the plan are resolved in the participant's favor, except if the plan was the product of collective bargaining agreements

becomes "totally disabled" while he is actively employed as a "covered person." [SSOF ¶ 6]. It is undisputed by the parties that Griffeth was a "covered person" only until January 17, 1992. [SSOF ¶ 6]. Accordingly, to obtain disability benefits under the Plan, Griffeth had to show that he was "totally disabled" at least by January 17, 1992. The Plan Administrator found that Griffeth had failed to make such a showing since evidence indicated that Griffeth became totally disabled on October 15, 1992, nine months *after* he was no longer a "covered person."

■ That evidence included the following. First, the SSA found that Griffeth became disabled on October 15, 1992. [SSOF ¶ 20]. Further, in a report submitted to the SSA, Griffeth's own cardiologist, Dr. Ruzich, indicated that Griffeth's disability began on October 15, 1992. [SSOF ¶ 15]. Finally, Griffeth's own statements

> reached after arms-length bargaining between parties of equal power. *Id.* at 950 n. 3. However, it is axiomatic that the *de novo* standard is triggered only when the participant argues that the plan terms *at issue* are ambiguous. That is, the *de novo* standard does not apply where the participant contends that plan term A is ambiguous, but does not argue that plan term B is ambiguous even though he was denied benefits based on plan term B. Any other rule would make no sense since, even if the court were to resolve the ambiguity in plan term A in the participant's favor, this would not affect the plan administrator's ultimate finding that the participant was not entitled to benefits under plan term B.

> That is precisely the situation in this case. Griffeth argues that the plan is ambiguous because "it does not put any time limits on a covered person qualifying for Social Security Disability Benefits after becoming disabled while engaged in covered employment." [Pl. Resp.Mot.Lim. at 3]. However, as Defendants note, this argument is a "red herring" since Griffeth was ultimately denied benefits *not* because he failed to qualify for Social Security Disability Benefits within a certain time period, but rather because he was not totally disabled while he was employed as a covered person.

> Accordingly, absent Griffeth's argument that the plan terms at issue in this case are ambiguous, the court will apply the abuse of discretion standard.

to the LU & C Plan and the SSA indicate that his disability began on October 15, 1992. [SSOF ¶¶ 8–9, 11–14]. Given the above overwhelming evidence, the court finds that the Plan Administrator did not abuse his discretion in reaching the decision he did.

 Griffeth's arguments to the contrary are unpersuasive. First, Griffeth relies on an affidavit drafted by Dr. Ruzich to argue that he was totally disabled on or before January 17, 1992. However, that affidavit was not part of the evidence submitted to the Plan Administrator. Under an abuse of discretion standard, the court can review only evidence presented to or considered by the administrators or trustees.[3] *Winters*, 49 F.3d at 553; *McKenzie v. Gen. Tel. Co.*, 41 F.3d 1310, 1316 (9th Cir.1994), *cert. denied*, 514 U.S. 1066, 115 S.Ct. 1697, 131 L.Ed.2d 560 (1995); *Taft*, 9 F.3d at 1471.

 Second, even if the affidavit was admissible, it does not warrant reversal for two reasons. In his affidavit, Dr. Ruzich does not state that Griffeth was disabled on or before January 17, 1992; rather, he only attests that Griffith was disabled by *January of 1992*. [*See* Ruzich Aff. ¶ 4]. Accordingly, Ruzich's affidavit is not necessarily inconsistent with the LU & C Plan

Administrator's finding that Griffeth was not disabled by January 17, 1992. Moreover, even if Dr. Ruzich had stated that Griffeth was disabled on or before January 17, 1992, this evidence would not warrant reversal. Under an abuse of discretion standard, the court must affirm the administrator's decision if it rests on some evidence, even if there is evidence to the contrary and even if the court would have reached a different conclusion. *E.g., Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 208 (7th Cir.1985) (overruled on other grounds); *Khan v. Grotnes Metalforming Sys., Inc.*, 679 F.Supp. 751, 762 (N.D.Ill. 1988); *Flinchbaugh v. Chicago Pneumatic Tool Co.*, 531 F.Supp. 110, 113 (D.Pa.1982). Here, as indicated above, the Plan Administrator relied on overwhelming and compelling evidence in reaching his decision; accordingly, even if Ruzich's affidavit or any other evidence previously offered by Griffeth contradicts that decision, the court cannot conclude that the Plan Administrator abused his discretion.

Finally, the cases Griffeth cites to are inapposite because they involve the Social Security Act[4] or state workmen's compensation acts.[5] They are inapposite because these acts define "disability" differently than the Plan. The Social Security Act

---

**3.** Defendants have also filed a motion in limine arguing that the Ruzich affidavit should be excluded. In response, Griffeth raised two arguments: (1) The court should consider the affidavit because it does not contain any "new substantive facts" not presented to the plan administrator, and (2) the court should consider the affidavit because a *de novo* standard applies since the plan terms are ambiguous. Both arguments are meritless.

Griffeth's first argument is meritless because the affidavit does contain new facts, since, as Defendants note, there are several inconsistencies between the affidavit and the administrative record. For example, while the administrative record indicates that Ruzich had previously told the SSA that Griffeth's disability "began October 10, 1992, and that Griffeth had been totally disabled from that date to the present" [SSOF ¶ 15], his current affidavit attests that Griffeth was "disabled for any type of substantial gainful employment" by January of 1992 [Ruzich Aff. at ¶ 4]. Further, if indeed the Ruzich affidavit

does not contain any "new facts," the court is moved to wonder why Griffeth would feel the need to supplement the administrative record with evidence that already exists in that record. As to Griffeth's second argument, the court has already rejected this argument in footnote 2 of this order.

Therefore, the court will grant Defendants' motion in limine.

**4.** *E.g., Perkins v. Ribicoff*, 201 F.Supp. 332 (E.D.Ark.1961); *Peck v. Ribicoff*, 193 F.Supp. 450 (E.D.Va.1961); *Adams v. Flemming*, 173 F.Supp. 873 (D.Vt.1959), *rev'd by* 276 F.2d 901 (2d Cir.1960).

**5.** *E.g., Luciani v. Workmen's Compensation Appeal Bd.*, 103 Pa.Cmwlth. 623, 520 A.2d 1256 (1987); *Owens–Corning Fiberglas v. Indus. Comm'n*, 66 Ill.2d 247, 5 Ill.Dec. 864, 362 N.E.2d 335 (1977); *Helms v. Employers Mut. Liability Ins. Co. of Wisconsin*, 95 So.2d 46 (La.App.1957).

defines disability as the inability to engage in "substantial gainful activity," 42 U.S.C. § 423(c)(2); in turn, most of the state acts define "disability" as the inability to perform the duties of former employment without great pain or great hazard to safety of himself or others. These definitions are different from the definition of "total disability" in the LU & C Plan; to be totally disabled under the Plan, a plan participant must be unable to continue in his employment as a covered person *and* to engage in or secure *any* other employment or gainful pursuit, regardless of whether the pursuit is "substantial" or not.[6] [SSOF ¶ 6]. Accordingly, the fact that plaintiffs with disabilities similar to Griffeth were found to be "disabled" under these dissimilar acts in no way impinges on whether Griffeth should have been found "disabled" under the LU & C Plan's more stringent definition of "disability."

IT IS THEREFORE ORDERED granting Defendants' motion for summary judgment on count 2 of Plaintiff's complaint (doc. 34).

IT IS FURTHER ORDERED granting Defendants' motion in limine (doc. 50).

---

**6.** Indeed, in one of the cases Griffeth cites to, the court makes clear that the Social Security Act does not require "total disability," only an inability to do "substantial gainful activity." *Adams,* 173 F.Supp. at 878.