LARRY DAWSON, Appellant, v. ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Alexi Giannoulias, State Treasurer and *ex officio* Custodian of the Rate Adjustment Fund *et al.*, Appellees).

Fifth District (Illinois Workers' Compensation Commission Division)
No. 5—07—0339WC

Opinion filed May 8, 2008.

Roman P. Kuppart and Harold B. Culley, Jr., both of Culley & Wissore, of Raleigh, for appellant.

Kenneth F. Werts and Julie A. Webb, both of Craig & Craig, of Mt. Vernon, for appellees.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

On November 21, 2000, claimant, Larry Dawson, filed an application for adjustment of claim pursuant to the Workers' Occupational Diseases Act (820 ILCS 310/1 through 27 (West 1998)), seeking benefits from employer, Freeman United Coal Mining Company. After a hearing, the arbitrator found claimant suffered coal worker's pneumoconiosis (CWP) caused by his exposure to coal dust and awarded claimant permanent partial disability (PPD) benefits in the sum of $421.59 per week for a period of 50 weeks, representing 10% loss of a man as a whole (820 ILCS 305/8(d)(2) (West 1998)). See 820 ILCS 310/7 (West 1998). The arbitrator denied claimant wage-differential benefits under section 8(d)(1) of the Workers' Compensation Act (820 ILCS 305/8(d)(1) (West 1998)), finding insufficient evidence to establish that claimant was not employable as a coal miner. On review, the Industrial Commission (Commission)[1] affirmed and adopted the arbitrator's decision. The circuit court confirmed the Commission's decision, and this appeal followed.

---

[1]Now known as the Illinois Workers' Compensation Commission. See Pub. Act 93—721, eff. January 1, 2005.

The following factual recitation is taken from the evidence presented at the arbitration hearing on October 4, 2004.

The 60-year-old claimant worked as a coal miner for approximately 26 years, during which time he was exposed to coal dust. Claimant testified that he last coal-mined on March 8, 1997, when employer closed the mine in Waltonville, Illinois, and laid claimant off from work. Claimant sought recall only for the Waltonville mine, identifying multiple positions he would perform, including laborer.

At the arbitration hearing, claimant testified that he limited his recall to the Waltonville mine because "in 26 years, I had breathed all the dust I really wanted to, and [if] I notified another panel, I would have to relocate, and my age and things, I just—I didn't want to do that, didn't want to breathe the dust. I had enough dust." Claimant did not seek medical treatment for breathing problems while employed as a miner.

Later, claimant testified that if he had not been laid off, he would have continued to work for employer. He had not thought about retirement: "I had a good job, you know."

Claimant was not returned to work and when he turned 55 years old (November 25, 1998), claimant retired and was no longer eligible for recall.

Claimant testified that "[a]while after the layoff," he began a course in heating and air conditioning at John A. Logan College. He spent two years there but did not complete the program. It was a government program. He stopped attending after the government stopped paying for his education. Claimant next worked for True Value Hardware, where he stocked shelves and unloaded trucks. His next job was with his current employer, Wal-Mart, where he works in maintenance. Claimant could not remember when he began working for Wal-Mart, "around 2000." No doctor advised claimant that he should retire for medical reasons or seek alternative employment.

Before mining, claimant maintained heavy equipment while in the service. After the service, he worked approximately two years on an assembly line and also assembled radiators for approximately two years. Claimant began working for employer in December 1970. He began as a laborer, became a shuttle car operator, a repairman, and finally a mine examiner. As a mine examiner, claimant walked approximately five miles in four hours on rough terrain and while carrying equipment weighing approximately 20 pounds. Claimant testified that he began to experience breathing problems when he worked as a shuttle car operator, in approximately 1973 or 1974. His breathing worsened over time and did not improve after he retired. Claimant testified at the arbitration hearing that he was able to walk about one

quarter mile, "however far that is," and climb two flights of stairs before experiencing breathlessness.

Claimant smoked for three or four years while in the service, beginning when he was 17 years old. During that time, he smoked approximately a half pack of cigarettes per day. Claimant testified that his physician had prescribed a Combivent inhaler for breathing approximately one year earlier.

Claimant's W-2 form from 2002 indicated an income of $12,098.46. Claimant's W-2 form from 2003 indicated an income of $14,321.75.

James Hess testified that he was the southern properties manager for employer. He had worked for employer for more than 27 years. Hess testified that if claimant had not limited his recall to the Waltonville mine, he would have been recalled to the mines south of Springfield, Illinois. If claimant had a "black lung letter," he would have been moved to a less dusty environment. Hess saw claimant most every day at the Waltonville mine and claimant never complained about breathing problems.

Dr. Parviz Sanjabi examined claimant on February 13, 2001, at the request of his attorneys. Dr. Sanjabi is affiliated with the Carbondale Clinic, Memorial Hospital, and Herrin Hospital. Since 1975, Dr. Sanjabi has worked with the Shawnee Health Development Program, which handles grants to black lung clinics. Dr. Sanjabi is not a radiologist or B-reader.

Dr. Sanjabi noted that claimant experienced a mild degree of breathlessness on exertion; he would get breathless upon carrying 50 pounds for 50 yards, which Dr. Sanjabi did not find "uncommon." Claimant's spirometry was normal but he had a borderline variance in his oxygen saturation. Dr. Sanjabi interpreted claimant's chest X-ray as compatible with CWP. According to Dr. Sanjabi, additional dust exposure would risk claimant's health. Dr. Sanjabi also stated that claimant's CWP would have been present when claimant was last exposed to coal mine dust.

On cross-examination, Dr. Sanjabi agreed that he is not board certified in pulmonary medicine or occupational disease, and he is not a radiologist or B-reader. Based on his testing, claimant could perform heavy manual labor. Claimant had normal pulmonary function. Claimant did not have a progressive disease. Dr. Sanjabi agreed that claimant's dyspnea was not significant.

Radiologist/B-reader Dr. Michael Alexander found small round opacities bilaterally in claimant's chest X-ray dated October 16, 2000, rating it positive for CWP, category 1/0.

Dr. Jeff Selby examined claimant on August 7, 2003, at employer's request. Dr. Selby is board certified in internal medicine and pul-

monology. He has also been a B-reader since 1985. Dr. Selby testified that claimant's physical exam was normal. Claimant's chest X-ray was "completely negative for coal worker's pneumoconiosis or any other significant abnormality." He found no evidence of any pulmonary function abnormality on pulmonary function testing. Based on his testing, claimant could perform heavy manual labor.

Radiologist/B-reader Dr. Jerome Wiot reviewed the chest X-ray dated October 16, 2000, finding no evidence of CWP.

Following the hearing, the arbitrator issued a decision in which she found claimant suffered from CWP caused by his exposure to coal dust and awarded claimant PPD benefits in the sum of $421.59 per week for a period of 50 weeks, representing 10% loss of a man as a whole (820 ILCS 305/8(d)(2) (West 1998)). The arbitrator denied claimant a wage-differential award under section 8(d)(1) of the Workers' Compensation Act (820 ILCS 305/8(d)(1) (West 1998)), finding insufficient evidence to establish that claimant was not employable as a coal miner.

Claimant sought a review of the arbitrator's decision before the Commission. In a unanimous decision, the Commission affirmed and adopted the arbitrator's decision. Claimant sought judicial review of the Commission's decision in the circuit court of Franklin County. The circuit court confirmed the Commission's decision and this appeal followed.

Claimant argues that the Commission's failure to grant him wage-differential benefits is against the manifest weight of the evidence. Specifically, claimant argues that he proved he could not continue to be exposed to coal mine dust without risking progression of his CWP and that he proved an earnings impairment.

Section 8 of the Workers' Compensation Act governs the "amount of compensation which shall be paid to the employee for an accidental injury not resulting in death." 820 ILCS 305/8 (West 1998). Section 8(d) details two types of compensation; subparagraph 1 provides for a wage-differential award (820 ILCS 305/8(d)(1) (West 1998)), and subparagraph 2 provides for a percentage-of-the-person-as-a-whole award (820 ILCS 305/8(d)(2) (West 1998)).

Specifically, section 8(d)(1) provides:

"If, after the accidental injury has been sustained, the employee as a result thereof becomes partially incapacitated from pursuing his usual and customary line of employment, he shall, except in cases compensated under the specific schedule set forth in paragraph (e) of this Section, receive compensation for the duration of his disability, subject to the limitations as to maximum amounts fixed in paragraph (b) of this Section, equal to 66-2/3% of

the difference between the average amount which he would be able to earn in the full performance of his duties in the occupation in which he was engaged at the time of the accident and the average amount which he is earning or is able to earn in some suitable employment or business after the accident." 820 ILCS 305/8(d)(1) (West 1998).

■ In order to qualify for a wage-differential award under section 8(d)(1) of the Act, a claimant must prove (1) a partial incapacity which prevents him from pursuing his "usual and customary line of employment" and (2) an impairment in earnings. 820 ILCS 305/8(d)(1) (West 1998); *Gallianetti v. Industrial Comm'n*, 315 Ill. App. 3d 721, 730, 734 N.E.2d 482, 489 (2000). Whether a claimant has introduced sufficient evidence to establish each element is a question of fact for the Commission to determine, and its decision in the matter will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Radaszewski v. Industrial Comm'n*, 306 Ill. App. 3d 186, 192, 713 N.E.2d 625, 629-30 (1999). For a finding of fact to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291, 591 N.E.2d 894, 896 (1992). That is to say, the Commission's determination on a question of fact is against the manifest weight of the evidence when no rational trier of fact could have agreed. *Dolce v. Industrial Comm'n*, 286 Ill. App. 3d 117, 120, 675 N.E.2d 175, 178 (1996).

■ The purpose of section 8(d)(1) is to compensate an injured claimant for his reduced earning capacity, and if the injury does not reduce his earning capacity, he is not entitled to such compensation. *Smith v. Industrial Comm'n*, 308 Ill. App. 3d 260, 266, 719 N.E.2d 329, 333 (1999). A wage-differential calculation presumes that but for his injuries, the claimant would have been in full performance of his duties. *Old Ben Coal Co. v. Industrial Comm'n*, 198 Ill. App. 3d 485, 493, 555 N.E.2d 1201, 1207 (1990). "A claimant must prove his actual earnings for a substantial period before his accident and after he returns to work, or in the event that he is unable to return to work, he must prove what he is able to earn in some suitable employment." *Smith*, 308 Ill. App. 3d at 266, 719 N.E.2d at 333. Thus, claimant here must show that, but for his injury, he would have continued his mining career.

■ Claimant testified that he last coal-mined on March 8, 1997, when employer closed the Waltonville mine and laid claimant off from work. Claimant sought work only at the Waltonville mine, identifying multiple positions he would perform, including laborer. At the arbitration hearing, claimant testified that he limited his recall to the Wal-

tonville mine because he did not want to relocate and "had enough dust." Later, claimant testified that if he had not been laid off, he would have continued to work for employer. He had not thought about retirement. Hess testified that if claimant had not limited his recall to the Waltonville mine, he would have been recalled to mines south of Springfield, Illinois. If claimant had a "black lung letter," he would have been moved to a less dusty environment. Dr. Sanjabi did not examine claimant until February 13, 2001, approximately five years after claimant last coal-mined and more than two years after claimant retired. Claimant was not precluded from returning to work due to his pneumoconiosis (Dr. Sanjabi did not examine claimant until February 13, 2001), and his reasons for retiring were independent of his condition. Claimant last worked as a mine examiner, walking five miles in four hours on rough terrain and while carrying equipment weighing approximately 20 pounds. If claimant had not been laid off, he would have continued to work for employer. Claimant did not qualify for a wage-differential award because he failed to establish that, but for his injuries, he would have been in full performance of his duties as a coal miner.

Further, no individual testified that claimant was not able to perform the work of a coal miner or that his respiratory problems precluded him from working as a coal miner. Although Dr. Sanjabi opined that additional dust exposure would risk claimant's health, he did not place any physical restrictions on claimant. Further, Hess testified that if claimant had a "black lung letter," he would have been moved to a less dusty environment. Claimant had normal pulmonary function. He experienced a mild degree of breathlessness on exertion; he would get breathless upon carrying 50 pounds for 50 yards, which Dr. Sanjabi did not find "uncommon" for claimant, who was 57 years old at the time of the examination. Dr. Sanjabi did not know why claimant experienced breathlessness. Based upon this evidence, the Commission denied claimant wage-differential benefits, finding insufficient evidence to establish that claimant was not employable as a coal miner. The Commission's decision to deny claimant a wage-differential benefit is not against the manifest weight of the evidence. Because we affirm the Commission's finding that claimant did not prove "a partial incapacity" prevented him from pursuing coal mining, we need not discuss whether claimant proved an impairment of earnings.

The cases relied on by claimant, *Owens-Corning Fiberglas Corp. v. Industrial Comm'n*, 66 Ill. 2d 247, 362 N.E.2d 335 (1977), and *Radaszewski v. Industrial Comm'n*, 306 Ill. App. 3d 186, 713 N.E.2d 625 (1999), are not persuasive. In those cases, there was substantial

588

evidence that the claimants could no longer pursue their usual employment.

For the reasons stated, we affirm the circuit court's order confirming the Commission's decision.

Affirmed.

HOFFMAN, GROMETER, HOLDRIDGE, and DONOVAN, JJ., concur.