PRICE, APPELLEE, *v.* DAUGHERTY; HEWITT SOAP COMPANY, APPELLANT.

(No. 7264—Decided February 16, 1982.)

E. S. Gallon & Associates Co., L.P.A., and *Mr. James R. Piercy,* for appellee Shirley Price.

*Mr. William J. Brown,* attorney general, and *Mr. James T. Weprin,* for Robert Daugherty.

*Messrs. Dinsmore, Shohl, Coates & Deupree* and *Ms. Glenda Morgan Daker,* for appellant Hewitt Soap Co.

ZIEGEL, J. This case began in the court of common pleas when defendant-appellant, the Hewitt Soap Company (hereinafter "Hewitt"), filed its notice of appeal from a decision rendered in favor of the plaintiff-appellee, Shirley Price (hereinafter "Price"), by the Industrial Commission of Ohio. After appropriate pleadings were filed as required by R.C. 4123.519, the case was tried before a jury on the issue of whether an admitted industrial injury which Price received on October 11, 1973, had aggravated a pre-existing psychiatric condition. The jury found in Price's favor, and this appeal followed, with the following asserted as error:

"1. It is prejudicial error to permit an expert to answer a hypothetical question which assumes as true facts not in

evidence and which omits facts in evidence when a consideration of such facts is essential to the formation of an intelligent opinion.

"2. It is prejudicial error to admit an expert opinion into evidence when the testimony reveals that the opinion was based on opinions of others and facts not in evidence.

"3. It is prejudicial error to prohibit a psychiatric expert from explaining a recognized psychiatric phenomenon, compensation neurosis, and its impact on the plaintiff's claim for aggravation of a pre-existing psychiatric condition.

"4. It is prejudicial error to exclude competent relevant evidence relating to plaintiff's receipt of benefits when the evidence is essential to a jury's understanding of an expert's opinion on proximate cause.

"5. It is prejudicial error to permit a case to go to the jury over defendant's motion for a directed verdict when the plaintiff failed to present any evidence to prove one of the required elements for recovery: the existence of a psychiatric condition on the date of the recognized industrial injury.

"6. It is prejudicial error to admit a record into evidence when the record contains an opinion of a person who has not been properly qualified as an expert and which was made through practices and procedures which are of such a subjective and technical nature as to require cross-examination.

"7. The court erred in denying defendant's motion for a new trial.

"8. Consistent rulings of the trial judge resulted in a pattern of prejudice to Hewitt which prohibited the defendant from presenting its defense."

The first two assignments of error are in regard to psychologist Silverman's testimony via deposition, and question, first, the properness of the hypothetical question submitted to him, and second, the permitting of his answer to that hypothetical question to stand.

Hewitt contends first that the hypothetical question was objectionable as misleading in that it left out essential facts necessary for the formation of an intelligent opinion. According to its brief, it was established that Price had experienced several serious gynecological surgeries, had a son with a drug problem, had a brother who had recently died after suffering from alcoholism, had a twenty-four-month old child die of Drano poisoning, and generally had a deprived childhood. Hewitt complains that the facts contained in the question related only to the back injury which Price sustained at work.[1]

Reliance is placed on *Squire* v. *Indus. Comm.* (1946), 46 Ohio Law Abs. 392, paragraph three of the headnotes, which states:

"It is prejudicial error to allow an expert to answer a hypothetical question which excludes from his consideration facts already proved by the testimony upon which the question is based when a consideration of such facts is essential to the formation of an intelligent opinion concerning the matter."

In the same vein is paragraph four of the syllabus of *Surman* v. *Gas & Oil Co.* (1962), 116 Ohio App. 453 [11 O.O.2d 292]:

"The contents of a hypothetical question asked an expert witness must fairly reflect those facts properly established by the evidence and upon which such witness is prepared to give his opinion, and a

---

[1] With regard to Price's gynecological surgeries, contrary to what Hewitt stated in its brief, it does appear that these were facts which Dr. Silverman was directed to consider in the hypothetical question. In the last paragraph of the rather lengthy hypothetical question, Dr. Silverman was asked "to assume the history you received from Shirley Price." Earlier in his testimony, he recounted this history, and it did include reference to her hysterectomy.

hypothetical question which omits a circumstance which would vitally affect the conclusion of such witness * * * is objectionable."

Unless it can be said that what a hypothetical question should contain was considered when it overruled the motion to certify the above case, the Ohio Supreme Court has never ruled upon that question. All the Supreme Court has ever said about the facts which make up a hypothetical question is that the facts upon which the hypothetical question is premised must be established by the party calling the witness by a preponderance of the evidence, and that it is up to the jury to determine whether that preponderance has been met. *Haas* v. *Kundtz* (1916), 94 Ohio St. 238; *Fox* v. *Indus. Comm.* (1955), 162 Ohio St. 569 [55 O.O. 472]. Nothing has been stated by that court as to whether all facts which the jury might find to have been established by a preponderance of the evidence must be included in the hypothetical question submitted to the expert witness.

In our opinion the better rule is stated in 2 Wigmore, Evidence (Chadbourn Rev. 1979) 951, Section 682(b):

"(b) The question, on principle, *need not include* any particular number of facts; *i.e.*, it may assume any one or more facts whatever, and *need not cover all the facts which the questioner alleges* in his case. The questioner is entitled to the witness' opinion on any combination of facts that he may choose. It is often convenient and even necessary to obtain that opinion upon a state of facts falling short of what he or his opponent expects to prove, because the questioner cannot tell how much of the testimony the jury will accept; and if proof of the whole should fail, still proof of some essential part might be made and an opinion based on that part is entitled to be provided for the jury. For reasons of principle, then, and to some extent of policy, the natural conclusion would be that the questioner need not cover in his hypothesis the entire body of testimony put forward on that point by him or by the opponent, but may take as limited a selection as he pleases and obtain an opinion on that basis. Such is the orthodox doctrine as applied by most courts." (Emphasis *sic*.)

Although not cited, Wigmore's rule is espoused in *Johnson* v. *Knipp* (1973), 36 Ohio App. 2d 218 [65 O.O.2d 342], wherein at page 220, the court, without citation, states:

"The trial judge has a great deal of latitude and discretion in the handling of opinion testimony by experts * * *. The absence of certain facts, or the failure of proof of others, goes to the weight and credibility of the testimony, not to its admissibility. The burden falls on the opposing party to discredit or minimize the expert's testimony through cross-examination * * *."

Where essential facts are for whatever reason omitted by the questioner from the hypothetical question, the opposing party certainly has the right, on cross-examination, to re-ask the question in which such additional evidentiary facts as it desires may be incorporated, and to obtain the opinion of the expert witness on the basis of the revised question.

The second objection Hewitt had to the hypothetical question submitted to Dr. Silverman was that it contained facts not established by the evidence. Evid. R. 703 requires that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." Thus, opinion testimony by an expert witness must be based upon facts within the witness's own personal knowledge or upon facts shown by other evidence. *State* v. *Chapin* (1981), 67 Ohio St. 2d 437 [21 O.O.2d 273]; *Kraner* v. *Coastal Tank Lines* (1971), 26 Ohio St. 2d 59 [55 O.O.2d 68]. Hewitt contends that the hypothetical question submitted to Dr. Silverman contained facts not shown by the evidence and not within Dr. Silverman's personal knowledge.

It is not necessary, however, that these underlying facts be *established* at the hearing. It is sufficient if testimony regarding them has been introduced so that there is an evidentiary basis for the jury to determine as to whether such facts have been established. Paragraph one of the syllabus of *Haas* v. *Kundtz, supra,* provides that:

"Where any opinion of an expert witness is given on a trial to a jury in answer to a hypothetical question, the court should instruct the jury that it is incumbent on the party calling the witness to establish the premises included in the question by a preponderance of the evidence."

Consistent therewith, the trial court gave the instruction to the jury recommended by Section 5.70(b) of 1 Ohio Jury Instructions 161:

"Questions have been asked in which an expert witness was permitted to assume that certain facts were true and to give an opinion based upon such an assumption. You must determine whether the assumed facts you heard in the so-called hypothetical question upon which the expert based his opinion were true. If any assumed fact was not established by a preponderance of the evidence, you will determine the effect of that failure upon the value of the opinion of the expert who testified in this case. * * *"

In our opinion, however, the trial judge does not fulfill his duty with regard to determining whether facts assumed in a hypothetical question have been established by a preponderance of the evidence simply by giving the foregoing instruction to the jury. If there is no evidence to support an assumed fact, or if the evidence is such that reasonable minds could not differ that such fact has not been established, the trial judge should intervene and sustain an objection to the use of a hypothetical question containing such fact. In such a case the judge is in the same position he would be in the case of a motion for a directed verdict.

The hypothetical question directed to Dr. Silverman asked him to assume the history he had received from Price. Earlier in his testimony, he had spoken of the case history he had received from Price. According to Dr. Silverman, this case history included, *inter alia,* the following:

"* * * Dr. Martinez wanted to determine her pain threshold and he administered placebos to her. The placebos evidently worked and he called this to her attention and she lost confidence in him and switched to Dr. Paley * * *.

"* * * She was scheduled for a hysterectomy in 1977. Her mother interfered, called Dr. Kalifo to protest the surgery and he became frightened and refused to go ahead * * *.

"* * * Dr. Kramer referred her to Cincinnati and Dr. Hunter there in 1978 informed her that surgery was needed on the neck and back for herniated cervical and lumbar discs and she postponed a decision on that * * *."

At the conclusion of the answer Hewitt moved that it be stricken in its entirety, which motion was overruled. Hewitt now complains that in formulating his answer to the hypothetical question, Dr. Silverman was asked to consider facts not properly in evidence; that the witness was permitted to consider "facts" told to him by Price which included opinions given her by physicians who were not called to testify; that such statements consisted of hearsay within hearsay; that only Dr. Martinez, Dr. Kalifo, and Dr. Hunter were proper persons to testify regarding the foregoing subject; and that none of them was called as a witness.

Price argues that these statements are permissible under Evid. R. 803(4). There is no need for us to decide whether the trial court erred when it overruled Hewitt's motion to strike since this ruling has not been assigned as error. It is interesting to note that when Price herself was testifying on direct examination her counsel elicited essentially the same infor-

mation from her regarding Dr. Martinez and Dr. Hunter as was contained in the recital of her case history to Dr. Silverman without any objection from Hewitt's counsel. On her cross-examination, counsel for Hewitt asked about whether Price's mother had contacted Dr. Kalifo (Kalfaolu) concerning a proposed hysterectomy, but upon motion by her own counsel her answer to that question was stricken. Thus, except for the Dr. Kalifo situation, the other two complained of case history statements were otherwise in evidence.

The question before this court is whether an expert witness may base his opinion upon evidence which he has heard or read on the assumption that the facts supported thereby are true. In *Zelenka* v. *Indus. Comm.* (1956), 165 Ohio St. 587 [60 O.O. 524], the expert was called upon to render an opinion based upon a hospital record already admitted into evidence. In holding such admission of an expert opinion thus obtained to be error, the Supreme Court quoted with approval *Estes* v. *Goodyear Tire & Rubber Co.* (1951), 60 Ohio Law Abs. 266, 269:

"It is a well known rule that hypothetical questions to an expert must include *the facts* that the expert is allowed to assume. The expert has no right to base his opinion on the expert opinion of another expert, and this should be doubly true where the so-called expert opinion is in a hospital record, and the other side has had no opportunity to cross-examine the doctor who for all that is known may have just guessed at the opinion he wrote in the hospital record, or may have based it on history given him by the patient or his family, or on other improper hearsay evidence."

In the case at bar, neither Dr. Martinez nor Dr. Kalifo nor Dr. Hunter testified. All that is known of their opinions is that which they allegedly told Mrs. Price. None of them was examined or cross-examined as to the accuracy of Price's statements or conclusions.

In *Taylor* v. *B. Heller & Co.* (C.A. 6, 1966), 364 F. 2d 608, 9 Ohio Misc. 104 [37 O.O.2d 365], it was held that an expert cannot base his opinion upon the opinions of others, either in evidence or not in evidence. Likewise, in *Cusumano* v. *Pepsi-Cola* (1967), 9 Ohio App. 2d 105 [38 O.O.2d 132], it was held that an expert may not base his opinion on hearsay statements of others, citing 21 Ohio Jurisprudence 2d 436, Evidence, Section 426. See, also, *Kraner* v. *Coastal Tank Lines, supra; Cousineau* v. *Indus. Comm.* (1949), 59 Ohio Law Abs. 142.

Accordingly, we hold appellant Hewitt's first assignment of error to be well-taken, insofar as that error assignment refers to inclusion of improper material in the hypothetical question submitted to Dr. Silverman.

As indicated above, Hewitt's second assignment of error deals with the trial court's permitting Dr. Silverman's answer to an improper hypothetical question to stand over motion to strike. If the hypothetical question was improper, certainly the jury should not have been permitted to consider the answer to the question, for reasons given in our discussion of Hewitt's first assignment of error. After the overruling of the motion to strike (made after Dr. Silverman answered the hypothetical question), Hewitt cross-examined Dr. Silverman. Although at the beginning of the hypothetical question submitted to him, Dr. Silverman was asked to assume that all the facts given were true and to assume no further or additional facts, it was brought out on cross-examination that Dr. Silverman did indeed take into consideration other information he had concerning Price, which matters were not included in the hypothetical and were not otherwise in the evidence. Dr. Silverman stated: "If I felt the material was worthwhile. I don't see how once having read it I could have erased it from my mind." Even though the motion to strike was not renewed at the end of this cross-examination, this in-

formation brought out on cross-examination reinforces our conclusion that the errors committed by the trial court per assigned errors one and two were prejudicial requiring reversal for a new trial.

In its third assignment of error Hewitt charges that the trial court erred when it refused to permit Hewitt to introduce into the case a psychiatric concept known as "compensation neurosis." Dr. Stanley Sturges, a psychiatrist, was presented as an expert witness for appellant Hewitt. During the course of his examination he was asked: "Will you please explain the medical term 'compensation neurosis?'" Upon objection, a short bench conference was held, after which court was recessed and the parties convened in chambers for further discussion. The chambers discussion revolved around the relevancy of the concept, during which Dr. Sturges was asked by the court to define the term "compensation neurosis," which he did. The judge determined to sustain the objection, and when court reconvened so advised the jury.

By way of defense to this assignment of error appellee Price contends that Hewitt's failure to make a proffer to the effect that she suffered from "compensation neurosis" now prevents Hewitt from assigning the court's ruling as error, citing *Pokorny* v. *Local 310* (1973), 35 Ohio App. 2d 178 [64 O.O.2d 277], paragraph three of the syllabus:

"When a trial court sustains objections to a question, a statement must be made or proffered as to what the expected answer would be in order that a reviewing court can determine whether or not the action of the trial court is prejudicial; and in the absence of a proffer, the exclusion of evidence may not be assigned as error."

True, no proffer was made as such. The voir dire in chambers, however, was reported in detail, so that, while we affirm generally the need for a proffer, in this case we are of the opinion that from the chambers proceedings we have sufficient knowledge to determine whether the judge's ruling was prejudicial.

It does not appear that the psychiatric concept of "compensation neurosis" has as yet entered into the realm of Ohio legal literature. Appellant, however, has referred us to a number of cases from other jurisdictions, most of which have been examined, which indicate that elsewhere the term and concept are in common use. In *Dept. of Highways* v. *Lindon* (Ky. 1964), 380 S.W. 2d 247, 248, "compensation neurosis" was held to be "a medically recognized mental aberration distinguished from conscious malingering." The term finds acceptance in the following workers' compensation cases: *Moses* v. *R. H. Wright & Son, Inc.* (Fla. 1956), 90 So. 2d 330; *Allis Chalmers Co.* v. *Indus. Comm.* (1974), 57 Ill. 2d 257, 312 N.E. 2d 280; *Holland* v. *Childers Coal Co.* (Ky. 1964), 384 S.W. 2d 293; *Farrow* v. *Cundiff* (Ky. 1964), 383 S.W. 2d 119; *Neagle* v. *State Highway Dept.* (Ky. 1963), 371 S.W. 2d 630; *Ross* v. *Sayers Well Servicing Co.* (1977), 76 N.M. 321, 414 P. 2d 679. In these cases evidence regarding "compensation neurosis" was permitted without question, and the respective courts discussed the term as if its meaning was well-understood. The problem in these cases was how and whether the concept applied to the facts of the case.

The transcript of the discussion which took place in chambers does not reveal with any certainty just why the trial judge sustained the objection. While the chambers discussion dealt with relevancy, which we acknowledge is a problem, we believe that it is too early at the time an expert is asked to define what may be a medical term to decide, without permitting the expert to answer and elaborate, that the subject matter is irrelevant. Certainly, if further inquiry does not establish relevancy, the evidence thus adduced upon motion may be stricken. The issue in this case is whether the October 11, 1973 accident aggravated a then-existing psychiatric condition. If the alleged

psychiatric condition which existed on October 11, 1973 is aggravated, not by the industrial injury but rather by "compensation neurosis," Price would not be entitled to recover. Dr. Sturges should have been permitted to answer the question, and Hewitt's third assignment of error is well-taken.

In Hewitt's fourth assignment of error, complaint seems to be made as to a pattern of rulings, not as to any specific ruling of the trial judge. The question is whether any discussion of compensation is relevant to the proceedings. It is well-settled that the task of the court of common pleas in a workers' compensation appeal is to determine whether or not the claimant is entitled to participate in the fund. The court of common pleas does not determine the amount or length of participation, and thus inquiry regarding these items should not be permitted. On the other hand, if, as here, a claimant, after the receipt of benefits from an injury has started, seeks a finding that the injury aggravated an illness or other physical condition existing at the time of the injury, the fact of compensation, if not the amount thereof, may be significant, particularly where the illness existing at the time of the injury was a psychiatric one, in determining whether the injury or some other cause independent thereof aggravated the condition. Thus we hold that a general rule that references to benefits or compensation in a workers' compensation case are improper is too broad. The circumstances of the case at bar would permit limited testimony as to the fact of compensation, and to the extent that the trial judge refused any such testimony he erred, and Hewitt's fourth assignment of error is well-taken.

Hewitt's fifth assignment of error is based on *Ackerman* v. *Indus. Comm.* (1936), 131 Ohio St. 371 [6 O.O. 85], the syllabus of which provides:

"1. In an action brought by a dependent for a death award under the Workmen's Compensation Act, on the ground that the injury accelerated a diseased condition and hastened death, such diseased condition must exist at the time of injury, else the case is not compensable.

"2. Unless and until it is shown that the diseased condition existed at the time of injury, all testimony tendered for the purpose of showing acceleration of a diseased condition is incompetent and should be excluded."

The contention is that there was no proof that the psychiatric condition of which Price complained existed *at the time of the injury,* on October 11, 1973.

Price's witnesses consisted of herself, her husband, Dr. Silverman, and Dr. Joseph B. Paley. Appellee Price testified as to a deprived childhood, various traumatic experiences, and an adulthood which may be characterized by poor health requiring numerous visits to many different doctors and quite a few periods of hospitalization. She also testified as to some kind of psychotic episode which required her hospitalization for six weeks in 1971, under the care of a Dr. Slavin. After her release from the hospital, she continued counseling and medication treatment with Dr. Slavin. Eventually, she went back to work. Her husband testified generally that after her hospitalization until her October 11, 1973 accident she was a normal person, living what appeared to be a normal life. Dr. Silverman examined her on May 6, 1978 solely for the purpose of these legal proceedings. From his own examination he was of the opinion that she had a hysterogenic personality disorder, and this disorder preexisted her October 11, 1973 injury.

Dr. Paley, an orthopedic surgeon, was first consulted by Price on November 4, 1974, after the October 11, 1973 injury. He testified that he treated her for low back pains, and on three occasions had her hospitalized. He diagnosed her as having a muscular ligamentus sprain of the low back and a psychiatric disorder, and that he attempted to treat the psychiatric

disorder with medication. Over objection he was permitted to testify that in his opinion the psychiatric condition he diagnosed pre-existed her October 11, 1973 injury, and that the injury "aggravated and flared up a pre-existing problem on the psychiatric level." Dr. Paley's reasons for these conclusions were "a history of a pre-existing disorder, a psychiatric disorder, dating back to 1971," and his own observations made in March 1975.

Clearly, there was no direct testimony, consistent with the requirements of *Ackerman, supra,* that Price had a psychiatric disorder on October 11, 1973. There was evidence that she had such a disorder some indefinite time prior to October 11, 1973, but nothing about what her situation was on that critical date. Appellee Price contends that from this fact it is inferable that the illness existed on October 11, 1973. Hewitt claims that such a conclusion would require that an inference be based on an inference, an unacceptable legal proposition. *Hurt* v. *Transp. Co.* (1955), 164 Ohio St. 329 [58 O.O. 122]. From appellant's point of view, the only fact established was that appellee had a psychiatric problem in 1971. The argument is that from that fact, one would need to infer that the 1971 problem had not been cured: "One would then need to infer that any psychiatric condition from [which] she now is suffering is the same psychiatric condition as that in 1971. Finally, one would need to infer that she was indeed suffering from a psychiatric condition on October 11, 1973."

From the jury's point of view, however, it is also a "fact" that the same psychiatric disorder which existed at the time Drs. Silverman and Paley examined Price, per their testimony, pre-existed the injury. When it is a "fact" that a certain condition existed before a given date, and also a "fact" that the same condition existed after that date, it is not unreasonable to infer that said condition existed on the given date. And this reasoning does not involve basing an inference upon an inference.

Our attention has also been invited to *Swanton* v. *Stringer* (1975), 42 Ohio St. 2d 356 [71 O.O.2d 325], wherein it is held that the aggravation of the pre-existing condition must be substantial. Hewitt contends that there was no evidence to establish the *substantial* nature of the aggravation. It seems to us, however, that if it is established that just before an injury a person has a non-incapacitating illness which after the injury becomes incapacitating, there is sufficient evidence to submit the issue of the substantial nature of the aggravation to the jury, along with the question of whether the injury proximately caused the aggravation.

Hewitt's fifth assignment of error is not well-taken.

The sixth assignment of error deals with six joint exhibits consisting of hospital records admitted into evidence, the authenticity of which was stipulated. Hewitt complains that some of the opinions stated in these records are inadmissible, and should not have been permitted to go to the jury. At the close of Price's case Hewitt's counsel objected to the admission of these joint exhibits. The trial court recognized there was hearsay and irrelevancies reported in these records, and indicated to counsel that the proffered exhibits would be admitted, and that in his instructions to the jury he would give an appropriate warning concerning these matters. Counsel for Hewitt agreed to this approach. Later, the court did indeed give a cautionary charge regarding these exhibits, which charge was repeated when the jury sought further instructions. In neither case did counsel for Hewitt state any objections to the charge. Under these circumstances we conclude that appellant Hewitt has waived any complaint regarding these exhibits. The sixth assignment of error is not well-taken.

The seventh and eighth assignments of error have been covered in what has

been stated regarding the first four assignments of error, and in view of the conclusions we have reached with regard to those cited errors, special attention need not be given to the last two.

The judgment of the court of common pleas will be reversed, and this case will be remanded to that court for a new trial consistent with the law and this opinion.

*Judgment reversed and case remanded.*

PHILLIPS and BROGAN, JJ., concur.

ZIEGEL, J., retired, of the Court of Common Pleas of Preble County, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.