OPINION
Bruce D. Swope, plaintiff-appellant, appeals the January 10, 2000 judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, wherein the court overruled appellant's and Amalia Cooper's, defendant-appellee's, objections to the magistrate's July 12, 1999 decision.
The parties lived in Indiana until September 1995, at which time appellee moved to Columbus, Ohio. During a subsequent trip to Indiana, appellee became pregnant. A daughter, Beatrice Cooper, was born on September 11, 1996, and has lived with appellee in Ohio since that time. Appellant was present for Beatrice's birth and maintained a relationship with her through visitation, except for approximately four months in early 1997 when appellee denied appellant visitation.
On April 25, 1997, appellant filed a petition to establish parental rights and/or allowance of visitation rights. Appellant also sought to be designated residential parent and legal custodian of Beatrice. On June 19, 1997, appellee filed a counterclaim in which she also sought to be named residential parent and legal custodian. In addition to the custody issue, the issue of child support from a separate case was also pending between the parties. On February 5, 1998, a trial was commenced before a magistrate on these contested issues. The trial ended on May 12, 1999, after twenty-two days and took place over the course of one and one-half years.
The magistrate filed a decision on July 12, 1999. In addition to other orders that are not pertinent to this appeal, the magistrate ordered that: (1) appellee shall be designated the sole residential parent and legal custodian; (2) appellant shall receive Loc.R. 22 visitation, subject to modifications specifically delineated; (3) appellant shall pay child support pursuant to the child support guidelines; and (4) the parties shall share equally in the transportation costs for visitation.
Appellant raised twelve objections to the magistrate's decision, and appellee raised five objections. The trial court overruled the parties' objections and filed its judgment on January 10, 2000. Appellant now appeals the trial court's judgment, asserting the following twelve assignments of error:
ASSIGNMENT OF ERROR NO. 1:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO REVIEW THE CASE DE NOVO, WEIGHING THE EVIDENCE AND DETERMINING CREDIBILITY AND SUFFICIENCY AS IF SHE HAD TRIED THE CASE.
 ASSIGNMENT OF ERROR NO. 2:
 THE MAGISTRATE ERRED AS A MATTER OF LAW IN RULING PLAINTIFF-APPELLANT WAS REQUIRED TO SHOW THE ADVANTAGE OF PLACING CUSTODY WITH PLAINTIFF-APPELLANT OUTWEIGHED THE DAMAGE CAUSED BY THE CHANGE AND THE TRIAL COURT ERRED IN FINDING THIS WAS NOT A CRUCIAL FACTOR IN AWARDING CUSTODY TO DEFENDANT-APPELLEE.
 ASSIGNMENT OF ERROR NO. 3:
 THE MAGISTRATE ERRED IN PLACING UNDUE EMPHASIS ON THE CONCEPT OF PRIMARY CAREGIVER AND THE TRIAL COURT FURTHER PLACED UNDUE EMPHASIS ON THIS FACTOR.
 ASSIGNMENT OF ERROR NO. 4:
 THE MAGISTRATE AND THE TRIAL COURT ERRED IN CONSIDERING THELMA WHITE'S OPINIONS CONCERNING THE ISSUE OF CUSTODY AND DAMAGE TO THE CHILD AND RELYING ON SUCH TESTIMONY.
 ASSIGNMENT OF ERROR NO. 5:
 THE TRIAL COURT ABUSED HER DISCRETION IN FINDING DEFENDANT-APPELLEE AMALIA COOPER WOULD FACILITATE VISITATION AFTER FINDING MAGISTRATE ERRED IN FINDING BRUCE WAS LESS LIKELY TO FACILITATE VISITATION.
 ASSIGNMENT OF ERROR NO. 6:
 THE MAGISTRATE AND THE TRIAL COURT ERRED AND ABUSED THEIR DISCRETION IN FINDING DEFENDANT-APPELLEE'S LIVING ARRANGEMENTS WERE SAFE AND A PROPER ABODE FOR THE CHILD.
 ASSIGNMENT OF ERROR NO. 7:
 THE TRIAL COURT AND THE MAGISTRATE ERRED AND ABUSED THEIR DISCRETION IN FINDING DEFENDANT-APPELLEE AMALIA COOPER CREDIBLE BASED ON A RECORD THAT DEMONSTRATES SHE DID NOT TELL THE TRUTH AS TO TAX FILINGS AND WAS EVASIVE AND UNTRUTHFUL AS TO OTHER MATTERS.
 ASSIGNMENT OF ERROR NO. 8:
 THE TRIAL COURT ERRED AND ABUSED HER DISCRETION IN IGNORING OBJECTIONS TO ERRONEOUS FINDINGS WHICH WERE NOT SUPPORTED BY THE EVIDENCE, AND WHICH AFFECTED CREDIBILITY, BEST INTEREST AND FINAL DECISION OF THE COURT.
 ASSIGNMENT OF ERROR NO. 9:
 THE MAGISTRATE ERRED AND ABUSED HER DISCRETION IN RULING DR. SMALLDON'S REPORT AND RECOMMENDATION WAS BASED ON PROSPECTIVE, RATHER THAN CURRENT FACTORS AND THE TRIAL COURT ERRED IN NOT CONSIDERING THE TESTIMONY AND PROPERLY WEIGHING ITS IMPACT, ALONG WITH DR. PAULUCCI'S TESTIMONY.
 ASSIGNMENT OF ERROR NO. 10:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN IGNORING ALL REPORTS INDICATING THE LEAST THAT SHOULD OCCUR IS A SHARED PARENTING ORDER OR IN FIXING A VISITATION SCHEDULE GRANTING EQUAL TIME WITH THE INFANT.
 ASSIGNMENT OF ERROR NO. 11:
 THE MAGISTRATE AND THE TRIAL COURT ERRED AND ABUSED THEIR DISCRETION IN FAILING TO CONSIDER DEVIATION FROM CHILD SUPPORT FROM THE BEGINNING OF THE CASE, THE MATTER HAVING BEEN REMANDED AND FURTHER, A DEVIATION BEING JUSTIFIED PROSPECTIVELY.
 ASSIGNMENT OF ERROR NO. 12:
 THE MAGISTRATE['S] AND TRIAL COURT'S DECISIONS ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND AGAINST THE WEIGHT OF THE EVIDENCE.
Appellant argues in his first assignment of error that the trial court abused its discretion in failing to review the case de novo, weigh the evidence, and determine the credibility and sufficiency as if it had tried the case. As we stated in State v. Cooper (1997),120 Ohio App.3d 284, "* * * although Civ.R. 53 allows for the appointment of magistrates to take evidence and recommend decisions, courts may not defer to the findings or conclusions of magistrates but must exercise independent judgment." Id. at 294, citing Normandy Place Assoc. v. Beyer
(1982), 2 Ohio St.3d 102, 105, and DeSantis v. Soller (1990),70 Ohio App.3d 226, 232-233.
Although appellant claims that the trial court did not review the twenty-seven-hundred-page transcript from the hearing before the magistrate, we find this without merit. The trial court's failure to comment on every piece of evidence or passage of testimony is not an indication that the court did not review the record. Contrary to appellant's opinion, the trial court's decision specifically notes its duty pursuant to Desantis to formulate an independent analysis of the issues underlying the magistrate's report, form its own factual determinations, weigh the evidence itself, and fully substitute its judgment for that of the magistrate. The trial court then again states that it "has extensively reviewed the record, file and exhibits in this case, and has weighed all of the factors independently." In addition, the decision is replete with references to the transcript, the court's determinations of the witnesses' credibility, and specific evidence in support of its reasoning. Appellant's first assignment of error is overruled.
Appellant argues in his second assignment of error that the trial court erred in ruling that he was required to show the advantage of placing Beatrice in his custody and how that outweighed the damage caused by the change. A trial court has broad discretion in determining issues relating to child custody. Davis v. Flickinger (1997), 77 Ohio St.3d 415, 421. Accordingly, we will not reverse a trial court's judgment in custody matters absent a finding of an abuse of discretion. Id. at 418. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
In support of his argument that the magistrate erroneously treated this matter as a change in custody, appellant points to the following statement by the magistrate: "The change would not be outweighed by the advantages of granting Bruce custody." While this standard is, indeed, the standard used for a change of custody, we find appellant's argument to be without merit. Appellant fails to cite the context of the selected quote:
 While the Magistrate recognizes, as did the guardian ad litem, that this case is the initial determination of custody and is not a modification of a prior decree, the Magistrate agrees with the guardian that, based on the testimony of Dr. White and Dr. Paulucci, it would likely be harmful to remove Beatrice from her mother's care, the primary caregiver, and change her primary environment. The change would not be outweighed by the advantages of granting Bruce custody.
Thus, from the context itself, it is clear that the magistrate did not treat the case as a change of custody case. The magistrate cites R.C.3109.04(F), and discusses individually all of the factors relating to the child's best interest and the proper standard for the original allocation of parental rights.
Further, there is nothing in the record to indicate that the magistrate ruled that appellant was "required" to demonstrate that the advantage of placing custody with him outweighed the damage caused by the change; rather, the magistrate took this into consideration as one of the many factors in determining the original allocation of parental rights. Although this is not an enumerated factor, R.C. 3109.04(F)(1) provides that in determining the best interest of a child, pursuant to R.C. 3109.04, the court must consider all relevant factors, including, but not limited to, the enumerated factors. Because the trial court has broad discretion in determining what factors are relevant, we find that the trial court did not err in finding this factor to be one relevant factor among many discussed. Therefore, appellant's second assignment of error is overruled.
Appellant argues in his third assignment of error that the magistrate and trial court erred in placing undue emphasis on the concept of primary caretaker. Ohio has not adopted the primary caretaker doctrine. Thompsonv. Thompson (1987), 31 Ohio App.3d 254, 255-257. Moreover, the statutory factors of R.C. 3109.04(F)(1) preclude any sort of "presumptive quality" from being given to the primary caretaker doctrine. Sellman v. Sellman
(Sept. 26, 1996), Highland App. No. 95CA888, unreported, citing Holm v.Smilowitz (1992), 83 Ohio App.3d 757, 776. However, there is no question that Ohio courts must give "due consideration" to which parent was the primary caretaker in fashioning a custody award. Bechtol v. Bechtol
(1990), 49 Ohio St.3d 21, 23. As the appellate court in Sellman stated, "[t]he pivotal question which must then be resolved herein is how to balance the primary caregiver doctrine against the statutory factors set forth in R.C. 3109.04(F)(1). We resolve this conflict by drawing no hard and fast rules." Sellman, supra.
In the present case, we do not find that the trial court or the magistrate placed "undue emphasis" on the primary caretaker factor. It was merely one factor among many statutory and unenumerated factors that the trial court and magistrate specifically analyzed. Further, the magistrate made findings that appellant was involved regularly and consistently in the child's life and, thus, did not ignore evidence presented on that issue. We also note that although appellant states that the magistrate demonstrated her gender prejudice "by establishing her belief breastfeeding bonds the mother to the child and further emphasizes her feeling that young children belong with the mother," the portion of the transcript that appellant points to reveals only that the magistrate was trying to clarify Dr. Thelma White's previous testimony regarding breastfeeding and bonding. The magistrate did not render an opinion or belief during this exchange, much less demonstrate prejudice. Appellant has failed to demonstrate that the magistrate treated the primary caregiver doctrine as an "irrebuttable presumption." Appellant's third assignment of error is overruled.
Appellant argues in his fourth assignment of error that the magistrate and trial court erred in relying upon White's opinions concerning the issue of custody and damage to the child. Appellant's main contention is that the hypothetical question posed by appellee's counsel regarding identification of the primary caregiver was inadmissible because it ignored the periods when appellant cared for the child after her birth and during the summer. We disagree. First, the hypothetical question included the fact that one parent "basically" saw the child on the weekends and that the other parent cared for the child the "majority of the time." Thus, the question did not ignore the fact that appellant also spent time with the child. Second, in Price v. Daugherty (1982),5 Ohio App.3d 157, the court of appeals stated:
 The [hypothetical] question, on principle, need not include any particular number of facts, i.e., it may assume any one or more facts whatever, and need not cover all the facts which the questioner alleges in his case. The questioner is entitled to the witness' opinion on any combination of facts that he may choose. It is often convenient and even necessary to obtain that opinion upon a state of facts falling short of what he or his opponent expects to prove, because the questioner cannot tell how much of the testimony the jury will accept; and if proof of the whole should fail, still proof of some essential part might be made and an opinion based on that part is entitled to be provided for the jury. Id. at 159 (quoting 2 Wigmore, Evidence [Chadbourn Rev. 1979] 951, Section 682(b); see, also, Self v. Trimble (Sept. 13, 1994), Franklin App. No. 93APE12-1713, unreported, quoting Price, supra.
The court in Price also stated:
 The trial judge has a great deal of latitude and discretion in the handling of opinion testimony by experts * * *. The absence of certain facts, or the failure of proof of others, goes to the weight and credibility of the testimony, not to its admissibility. The burden falls on the opposing party to discredit or minimize the expert's testimony through cross-examination * * *. Id. quoting Johnson v. Knipp [1973], 36 Ohio App.2d 218, 220.
In the present case, appellant added his own assumptions to the hypothetical question on cross-examination and recross-examination, thereby curing any potential misapprehension. See Am. Manuf. Mut. Ins.Co. v. United States Fire Ins. Co. (Feb. 22, 1984), Summit App. No. 11307, unreported. We also note that this hearing was before a magistrate rather than a jury. A trial judge is presumed to disregard any misstatement of the evidence, which may come before her. Id.
Therefore, appellant's fourth assignment of error is overruled.
Appellant argues in his fifth assignment of error that the trial court abused its discretion in finding that appellee would facilitate visitation. The trial court spent considerable time on this issue, reviewing and analyzing all of the evidence and testimony. Although the trial court stated that it disapproved of appellee's actions in stopping visitation for a four-month period before the temporary orders were in place, the trial court found that based upon the evidence, appellee would honor visitation. Appellee admitted that it was not in the best interest of the child to keep her from appellant during these four months, and she testified that she believes it is very important for the child to have a relationship with appellant. The trial court also noted that since parentage was established and orders were put in effect, appellee has fully cooperated with visitation and appellant has received the entire visitation pursuant to the court order since that time. Appellant also testified that he believes appellee is capable of complying with court orders, and appellee has cooperated since the order went into effect. Based upon the testimony presented, we cannot find that the trial court's decision was unreasonable, arbitrary or unconscionable. See Blakemore,supra. Appellant's fifth assignment of error is overruled.
Appellant argues in his sixth assignment of error that the magistrate and the trial court abused their discretion in finding that appellee's living arrangements were safe and proper for a child. Appellee and Beatrice reside in the basement of the home of appellee's mother. The magistrate stated that the basement was warm, roomy, finished, and pleasant. The magistrate further found that the "wood room" was an excellent exit from the basement in the event of an emergency and that the stove and furnace are checked once per year by a furnace inspection company. The trial court also found that both parties' homes were clean and appropriate child-rearing environments.
Appellant argues that the basement is unsafe because the "wood door" is very heavy, the floors and walls have numerous extension cords and conduit, and the furnace is near a wooden stairway exit. However, appellee testified that she tries to keep the extension cords up and out of the reach of Beatrice. Further, appellee and her mother testified that the heating unit in the basement is professionally inspected yearly. Appellee also stated that the wood stove is blocked off from their portion of the basement. As for the "wood door," appellee testified that it works well as an escape route and that she could use it in the event there was an emergency in the basement. Appellee added that the basement has windows that can be taken completely out, as well. The photos admitted as evidence do not contradict appellee's or her mother's testimony. Therefore, given the sum of evidence, we find the trial court did not abuse its discretion in determining that appellee's living quarters were safe and proper for Beatrice. Appellant's sixth assignment of error is overruled.
Appellant argues in his seventh assignment of error that the trial court and magistrate abused their discretion in finding that appellee was credible because she lied about not claiming Beatrice on her 1997 income tax return and was without memory for much of her cross-examination, unless her response was helpful to her case. The magistrate addressed this issue rather extensively and found appellee had not intentionally lied to the court about the tax return. Appellant would urge this court to remand the case based upon appellee's representations as to her income tax return, pursuant to the "lie about one thing, lie about everything" maxim. However, as the trier of fact, the magistrate was "best able to view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Giurbino v. Giurbino (1993), 89 Ohio App.3d 646,659. It would be difficult for this court, upon appellate review of only written transcripts, to question both the magistrate's and trial court's determinations of credibility under these circumstances. An appellate court must give deference to the trier of fact's evaluation of the credibility of witnesses. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. Thus, we cannot say that the trial court or magistrate abused their discretion in finding appellee credible. Appellant's seventh assignment of error is overruled.
We will next address appellant's ninth assignment of error in which he argues that the magistrate abused her discretion when she ruled that Dr. Smalldon's report and recommendation was based on prospective rather than current factors, and the trial court erred in not considering and properly weighing both Drs. Smalldon's and Paulucci's testimony. Although appellant claims that the magistrate fully dismissed Smalldon's report and gave it "no value," the magistrate's decision does not indicate such. The magistrate pointed out on page twenty-eight of her decision that Smalldon's recommendation focused upon contingencies and not upon current factors, but this does not necessarily mean that she ignored the report or opinions of Smalldon. However, even so, as we stated in Brooksv. Brooks (Dec. 14, 1995), Franklin App. No. 95APF03-381, unreported: "The court's * * * original award [of custody] * * * should be based upon present or past circumstances, not on future possibilities or contingencies." Thus, the magistrate was within her discretion to discount Smalldon's report regarding appellee's psychological status as it related to only contingent effects upon Beatrice. Further, as the magistrate found, there was no evidence that appellee's depression had any past negative effects upon Beatrice. Therefore, we find this argument without merit.
With regard to the magistrate's weighing of the testimony of Smalldon and Paulucci, we do not find that the magistrate erred. Appellant quotes several opinions of Paulucci and Smalldon in support of his argument. However, the record reveals that the magistrate spent considerable time discussing and analyzing the opinions of both doctors, including those opinions quoted by appellant. Although appellant would wish this court to analyze and weigh the evidence differently than the magistrate did, once expert testimony is admitted, it is the role of the trier of fact to assign weight to the expert's testimony and opinions. Pangle v. Joyce
(1996), 76 Ohio St.3d 389. We do not find the magistrate's decision to be arbitrary, and appellant's ninth assignment of error is overruled.
Appellant argues in his tenth assignment of error that the trial court erred in ignoring all reports indicating the least that should occur is a shared parenting order or visitation order granting equal time with Beatrice. With regard to shared parenting, "[o]nly when a satisfactory shared parenting plan is filed by a party seeking shared parenting may a trial court adopt the shared parenting plan. In any other case, the trial court must allocate parental rights by naming one parent residential parent and legal custodian and awarding any reasonable visitation to the other parent." In re Foster (Mar. 13, 2000), Warren App. No. CA99-09-116, unreported, citing McClain v. McClain (1993), 87 Ohio App.3d 856, 857; see, also, R.C. 3109.04(A)(1). Thus, a trial court may not sua sponte
create a shared parenting plan. Wangugi v. Wangugi (Sept. 4, 1996), Ross App. No. 95 CA 2160, unreported.
Further, the trial court could have reasonably relied upon the report of the guardian ad litem in fashioning the visitation order. Although the guardian stated that she would like to see cooperation between the parties and substantial companionship time with appellant, she found that joint decision making would be difficult without counseling, that visitation time was hampered by the distance between the parties, and that the young age of the child affected the duration of each visitation. Therefore, we cannot find that either the magistrate's or the trial court's determinations were arbitrary or unreasonable. Appellant's tenth assignment of error is overruled.
Appellant argues in his eleventh assignment of error that the magistrate and the trial court abused their discretion in failing to consider a deviation from child support. Specifically, appellant claims that the magistrate "ignored the record" and did not consider his expenses, the cost of long-range visitation, appellee's earning capacity, or appellee's lack of cooperation. Under Ohio law, the amount calculated under the child support guidelines is rebuttably presumed to be correct. R.C. 3113.215(B)(1). R.C. 3113.215(B)(3) allows courts to deviate from the guidelines and to consider certain factors. Again, we review the order for an abuse of discretion. Booth v. Booth (1989),44 Ohio St.3d 142,144.
Appellant lives in South Bend, Indiana, and appellee lives in Columbus, Ohio. Appellant's main complaint is that "travel time alone justifies deviation." However, the magistrate ordered the parties to share in the travel expenses by driving to a halfway point for all pick-ups and drop-offs. Further, appellant testified that he did not think that a deviation would benefit Beatrice "at all." Given the magistrate's order requiring shared expenses for traveling, we cannot say that the magistrate abused her discretion in failing to find that appellant's visitation caused him to suffer an "extraordinary cost." R.C. 3113.215(B)(3)(d).
Appellant also argues that the trial court should have imputed income to appellee of at least $12,000, which she earned as a waitress in 1994-1995, instead of the $5,200 used for child support guideline purposes. In Rock v. Cabral (1993), 67 Ohio St.3d 108, the Ohio Supreme Court stated that:
 * * * [w]hether a parent is "voluntarily underemployed" within the meaning of R.C. 3113.215(A)(5), and the amount of "potential income" to be imputed to a child support obligor, are matters to be determined by the trial court based upon the facts and circumstances of each case. The determination will not be disturbed on appeal absent an abuse of discretion. Id. at syllabus.
In deciding if an individual is "voluntarily underemployed" "[t]he test is not only whether the change was voluntary, but also whether it was made with due regard to the obligor's income-producing abilities and her or his duty to provide for the continuing needs of the child or children concerned." Woloch v. Foster (1994), 98 Ohio App.3d 806, 811.
Because appellee left her $12,000-a-year job to move back to Columbus, given the underlying circumstances, it is hard to conclude that the change was "voluntary." On the other hand, her choice to obtain her current $5,000-a-year job rather than waitress again can be said to be voluntary. Considering the entire record, we find that the trial court did not abuse its discretion in failing to impute additional amounts of income. The magistrate's calculation of appellee's income was not arbitrary; rather, the evidence and appellee's testimony indicate that she earned $6,600 in 1995, $3,500 in 1996, and $5,500 in 1997, for an average of $5,200 annually. It was appropriate to average appellee's income for three consecutive years to determine her annual gross income. See Blakemore, supra, at 219; see, also, R.C. 3113.215. Further, child support was not ordered until approximately April 1997. Thus, because appellee had been employed at a variety of jobs since 1995 and earned approximately the same annual wage, it does not appear that she obtained her current job in an attempt to intentionally extract more child support from appellant. Therefore, appellant's eleventh assignment of error is overruled.
Appellant argues in his eighth assignment of error that the trial court abused its discretion by ignoring objections to erroneous findings by the magistrate that were not supported by the evidence and affected credibility, the best interests of Beatrice, and the final decision. Appellant specifically sets forth forty-two individual findings of fact by the magistrate to which he objects. Although technically appellant's stated assignment of error requests only that this court determine whether the trial court erred procedurally in not reviewing each of his asserted arguments, he also presents his arguments regarding each of the findings. We shall briefly address each.
Appellant argues that the magistrate erred in findings two, five, fifteen, sixteen, and sixty-five through sixty-eight. These findings have little or no relevancy to the underlying issues or have been addressed in previous assignments of error. Thus, these arguments are without merit.
Appellant next contends that the magistrate erred in finding nine in which she found that Nancy Milliken, a counselor, testified appellant would rather go to jail than pay child support. The record reveals that Milliken's testimony was actually based on appellant telling her that he would rather go to jail than be involved with the bureaucracy of the Child Support Enforcement Agency. The record does not make clear precisely what appellant meant when he made this statement to Milliken. Therefore, we cannot say that the magistrate erred in her finding.
Appellant claims that the magistrate erred in finding eleven in which she found that appellee told appellant she would not allow visitation until there was a formal court order. Although the testimony is not clear that appellee actually said this to appellant, she did testify that based upon advice from an attorney in a prepaid legal plan, she did not allow appellant to have visitation until court orders were in place. Further, in a phone conversation taped by appellant immediately after he received his paternity results (appellant's Exhibit 7), appellee told appellant twice that she would not allow him to see Beatrice until they had a "formal arrangement," although it is not clear what she meant by this term. Regardless, we find that whether she actually communicated to appellant that she would not allow visitation until a formal court order was in place is not material to the present issues.
Appellant asserts that the magistrate erred in finding seventeen in which she found that appellee advised appellant she had Hepatitis A by giving him a copy of her obstetrical report, and in which the magistrate also found that appellee did not suffer from Hepatitis A. Although appellee's testimony is rather muddled at different times regarding this issue, the record reveals that appellee did testify that she sent appellant a copy of the report. Appellee also testified that she told appellant about her Hepatitis B exposure. Further, although it is uncertain as to what the magistrate meant by stating that appellee did not "suffer" from Hepatitis A, she may have meant that she suffered no adverse effects from contracting it, which is supported by the record. The magistrate also could have intended to state that appellee never actually contracted Hepatitis B, as appellee had incorrectly thought after being exposed to the disease while in the army. Either way, this finding has little persuasive value to the present issues, and this argument is without merit.
Appellant next argues that the magistrate erred in finding eighteen in which she found that during Thanksgiving 1996, appellee was the primary caretaker of Beatrice while he worked and slept. We can find no error in this finding. Appellee also testified that, contrary to the testimony given by appellant's family, she did not spend the majority of her afternoons sleeping during this period. Further, appellant fails to note that the magistrate also made the finding that he took care of Beatrice during the times he was not working or sleeping. These findings were not arbitrary.
Appellant next argues that the magistrate erred in the footnote to finding twenty-five in which the magistrate found that her previous visitation orders were discretionary. In the June 5, 1997 order, the magistrate ordered that "[w]hen [appellant] is in town, he shall be granted a minimum of 2 hours visitation with the minor child, with the exception that he notify [appellee] 24 hours prior to arrival." In the November 25, 1997 magistrate's order, the magistrate ordered, "[w]hile in Columbus on other matters, [appellant] may visit child." As for the June 5, 1997 order, the plain meaning of the order appears to be that the first two hours of visitation for appellant were required, but any amount of visitation over the two hours would be at appellee's discretion. As for the November 25, 1997 order, the magistrate's use of the word "may" seems to indicate discretion on the part of appellee, particularly when contrasted with the word "shall" used in the June 5, 1997 order. Thus, our analysis of this language is the same as the magistrate's. We decline to try to second-guess the plain language of the orders. We find no abuse of discretion.
Appellant next argues that the magistrate erred in finding twenty in which she found that Brad Ullery, a friend of appellant's, testified that appellant's marriage ended due to his alcoholism. On cross-examination, Mr. Ullery responded to the question "[d]id you know that one of the reasons his first marriage broke up [was] due to his alcoholism?" by stating, "[y]es, I guess I would say so." On redirect, Mr. Ullery stated that he knew these were allegations that appellant's former wife was making. These two statements could be construed as conflicting, and the magistrate was in the best position to weigh Mr. Ullery's testimony. We find no abuse of discretion.
Appellant next asserts that the trial court erred in finding twenty-six regarding his credibility based upon two incidents. The first incident involved an exchange of Beatrice for visitation at a mall and dog hair having been found on Beatrice's shirt. The incident was videotaped, and appellant presents various analyses of the incident. However, the videotape is not in the record, and, thus, we cannot review it. The second incident involved a shirt of Beatrice's that appellant presented as evidence that appellee smoked around Beatrice the night before the hearing. The shirt in question was preserved in a plastic grocery bag and allegedly exposed to the smoke over a year and half ago, making the issue impossible to review at this time. Despite appellant's urging of this court to reevaluate the magistrate's determinations on these issues, the weighing of the credibility of the witnesses is within the providence of the trier-of-fact, and we will not disturb these findings under the circumstances.
Appellant next asserts that the magistrate erred in finding twenty-seven that appellant yelled at appellee that she would never see Beatrice again if he got custody. Jen Bodine, a friend of appellee's, testified that she heard appellant scream this statement. Although appellant points to alleged inconsistencies with regard to testimony on unrelated issues, appellant points to no evidence contradicting Bodine's testimony on this particular issue. We find that the magistrate's finding was not arbitrary.
Appellant next argues that the magistrate erred in finding twenty-eight by stating that Smalldon did not specifically diagnose appellee as suffering from any "mental illness." It is unclear as to what the magistrate meant by "mental illness." Appellant points out that several doctors, including Smalldon, all found that she suffered from depression. However, more importantly, the magistrate fully discussed appellee's depression and its effects. Thus, regardless of the magistrate's definition of "mental illness," we find that she fully appreciated and discussed the relevancy of appellee's depression in considering Beatrice's best interest.
Appellant next argues that the magistrate erred in finding twenty-nine in which she found that appellant continued to use marijuana, that Smalldon did not administer a specific test to detect alcoholism, and that Smalldon was not aware of appellant's cocaine use. As for the test for alcoholism, the magistrate's actual finding was that Smalldon did not use a separate testing mechanism devised solely for detecting alcoholism. The record reveals that Smalldon used the Minnesota Multiphasic Personality Inventory test, which included one scale to identify individuals who share characteristics with alcoholics. Thus, the magistrate was correct that Smalldon did not use a separate test devised solely to detect alcoholism. As for the finding that appellant continued to use marijuana, Smalldon testified that appellant had occasionally used marijuana within a year or two of seeing him. As for Smalldon's knowledge of appellant's cocaine use, contrary to the magistrate's finding, Smalldon did testify that appellant had told him that he had used cocaine. However, in sum, we find this was harmless error. Given that the trial court and magistrate did not relate any specific conclusions regarding this finding, it would be difficult for us to term this prejudicial.
Appellant next argues that the magistrate erred in finding thirty in which she found that Smalldon reported that appellant projected himself in an unrealistically positive light. First, the magistrate did not make any specific finding of her own; rather, she quoted Smalldon's own report to that effect. Second, although Smalldon testified at trial that appellant's profile was not "anywhere near that exaggerated," Smalldon still stated that appellant had a mild tendency to cast himself positively and was overly cautious. Third, the trial court also buttressed its finding by noting that Tina O'Neal, a friend of appellee's, testified that appellant continually tried to place himself in an unrealistically positive light. We cannot find that the magistrate's determination was arbitrary.
Appellant next asserts that in finding thirty-one, the magistrate erred in her analysis of Smalldon's report. Although appellant attempts to bolster the findings in Smalldon's report by pointing out that Paulucci testified that appellee was angry, impulsive, and depressed, the magistrate's analysis in finding thirty-one is unrelated to these factors and does not even mention these traits. Rather, the magistrate seems to question Smalldon's report on the basis of internal inconsistencies, reliability, or bias, which appellant does not address. Appellant's argument is without merit.
Appellant contends that in finding thirty-five, the magistrate erred in finding that appellee has enough insight into her depression to seek treatment. The magistrate was relying upon Paulucci's testimony to that effect and apparently found Paulucci credible. Appellant presents no argument as to why Paulucci is not credible on this issue. That appellee has taken approximately one dozen medications for her depression is not necessarily indicative of her failure to have insight into her treatment; rather, it could be construed to demonstrate that she has continued to seek more effective treatment. Further, White testified that St. John's Wort, an herbal medication which appellee was taking, has been touted by some publications and its users as being effective in treating depression. Appellee also testified that she did not suffer any side effects with St. John's Wort, as she did with prescription medications, and her doctor was the one who suggested she use it. We cannot find that the magistrate abused her discretion.
Appellant next asserts that in findings forty through fifty-five, the magistrate's analysis of White's testimony ignores White's notes. However, appellant mostly disagrees with White's findings themselves, rather than the magistrate's interpretation of them. It was within the providence of the magistrate to find White's testimony credible and draw conclusions therefrom. Appellant also attempts to discount White in full because she "did not work on this case" and was a friend of the family. First, the record suggests that White worked with some of appellee's family members for counseling and custody purposes and fails to reveal that she was a social friend of the family. Second, although White "did not work on this case," in that she did not interview appellant or do testing on the child, White's testimony was not specific to the present case. Instead, White's testimony on child custody matters consisted solely of answers to a myriad of hypothetical questions posed by both parties' attorneys, the magistrate, and the court, and were grounded upon her expertise in the area of child psychology. Importantly, she specifically testified during cross-examination that she did not believe her role in the present case was to render a recommendation for custody. We find this argument without merit.
Appellant next asserts that the magistrate improperly found in finding fifty-seven that attorney Lois Palau's testimony supported appellee's contention that she denied visitation on advice of counsel. However, in finding fifty-seven, the magistrate merely made a finding of fact and reiterated the testimony of Palau on this issue. The magistrate did not render the conclusion that appellant claims she made in this particular finding. The magistrate's finding accurately reflects Palau's testimony regarding this issue. We cannot find the magistrate abused her discretion.
Appellant also argues that the magistrate erred in finding sixty-five in which she found that appellee did not willfully lie about taking a tax exemption for Beatrice in 1997. During the trial, appellee testified that she did not take an exemption for Beatrice in 1997. The magistrate found that at the time appellee testified, she had already amended her tax return to disclaim the exemption as a result of a letter from the IRS. Thus, the magistrate determined that her testimony was not false. Further, the magistrate acknowledged that appellee's testimony was "incomplete." Appellee's counsel explained to the magistrate that she thought appellee had been taken by surprise by the question and answered the question in a manner that was technically correct at the time. We cannot say the magistrate's conclusion was unconscionable.
Appellant next asserts that the magistrate erred in finding sixty-nine in which she found that appellant did not want to be involved with the Ohio child support withholding system. We already addressed this issue with regard to the magistrate's ninth finding. Further, a review of the record reveals that the magistrate's findings almost mirror the testimony of Milliken with regard to appellant's feelings toward the withholding system. We do not find any error in the magistrate's recitation of the evidence.
Appellant next contends that the magistrate erred in finding seventy-four. In this finding, the magistrate noted that two of appellee's witnesses had complained to appellee's counsel that while they were testifying, appellant was making threatening faces and gestures at them and distracting them. The magistrate also noted on the record and in finding seventy-four that she also saw appellant making gestures and expressions during the course of the trial. Appellant claims that the magistrate's mention of this incident shows her bias against "a person that family, friends and psychologists perceive as a good, gentle, loving father." First, we cannot possibly review whether appellant was actually exhibiting the actions the two witnesses and the magistrate observed. Second, appellant's counsel admitted in more euphemistic terms: "I've been sitting here and I glance at [appellant] from now [sic] and he's sometimes a little bit animated at what he hears that he thinks is not true * * *." Appellant's counsel also admitted in appellant's brief that appellant "grumbled and grimaced," although he denied any threatening or intimidating gestures. Regardless, the magistrate's findings accurately reflect her stated observations and complaints of the two witnesses as related in the transcript. We are reminded that the knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot adequately be conveyed to a reviewing court by a printed record. Trickey v. Trickey (1952), 158 Ohio St. 9, 13. We cannot find that the magistrate's finding was arbitrary.
Appellant next asserts that the magistrate erred in finding seventy-five in which the magistrate found simply that neither party had requested shared parenting. This is a true statement. Further, we have already addressed the issue in the tenth assignment of error. This argument is without merit. Therefore, appellant's eighth assignment of error is overruled.
Appellant argues in his twelfth assignment of error that the magistrate's and trial court's decisions granting custody to appellee were not supported by sufficient evidence and against the manifest weight of the evidence. In his brief, under this assignment of error, appellant quotes the best interest factors contained in R.C. 3109.04(F)(1) and presents no new arguments or any issues that have not already been discussed under previous assignments of error.
As previously noted, our standard upon appellate review is one of an abuse of discretion in which we must find the trial court's decision was unreasonable, arbitrary, or unconscionable. We have reviewed the best interest factors contained in R.C. 3109.04(F)(1), the entire record, and the in-depth analyses of both the trial court and the magistrate on each of these factors. We do not find that the trial court's analysis of the best interest factors was arbitrary, unreasonable, or unconscionable. Rather than endeavor to reiterate the same findings as the trial court and restate our previous analyses under the assignments of error, we adopt the trial court's reasoning as to the best interest factors contained in R.C. 3109.04(F)(1). There was sufficient evidence to support the trial court's decision, and it was not against the manifest weight of the evidence. Therefore, appellant's twelfth assignment of error is overruled.
Accordingly, we overrule all twelve of appellant's assignments of error and affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.
 _____________________ BROWN, J.